# EXHIBIT 6

Direct Dial: 312.855.0311(SOR)<br>
E-mail: sreed@rgrlaw.com<br>
Direct Dial: 312.855.1040 (KAR)<br>
E-mail: kreardon@rgrlaw.com

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

July 10, 2006

Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, NY 10022

RE: <u>Kingsway Financial Services, Inc. v. PricewaterhouseCoopers, *et al.*</u>
     <u>Case No.:   03 CV 5560 (RMB)</u>
     <u>Court:      Southern District of New York</u>
     <u>Our File No.: DORE-KSL-0002</u>

Dear Mr. Ruvoldt:

We write concerning the review of American Country Insurance Company ("ACIC") claim files at ACIC's Elk Grove Village, Illinois offices. Further to your proposal, as confirmed in Magistrate Pitman's May 26, 2006 order (as amended by his June 9, 2006 order), we have engaged in the on-site review of the limited information made available to us through ACIC's WINS database system from June 6, 2006 through June 30, 2006 (excepting week-ends and Mondays). You were ordered to make this available to us on a trial, without-prejudice, basis as a means to provide information responsive to the following interrogatories:

    1.    Identify each ACIC claim file which you contend was inadequately reserved on:

          (a)    December 31, 2001;

          (b)    April 5, 2002;

          (c)    December 31, 2002: and

          (d)    April 15, 2003.

    2.    For each ACIC claim file identified in response to Interrogatory No. 1, above, identify:

Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
July 10, 2006
Page 2

    (a)    the amount of the indemnity reserve and the amount by which you contend that reserve was deficient at each of the dates indicated in Interrogatory No. 1(a) - (d)

    (b)    the amount of the loss adjustment expense reserve and the amount by which you contend that reserve was deficient at each of the dates indicated in Interrogatory No. 1(a) - (d)

\* \* \*

(Dore First Set of Interrogatories, Nos. 1, 2(a)-(b)) ("Interrogatories"). In addressing the subject of the underreserved claim files, Magistrate Pitman commented that "this particular subject is probably more efficiently explored by way of interrogatory than by having a 30(b)(6) witness come in and rattle off the claim files that were allegedly underreserved as of December 31, 2001." (Transcript, May 31, 2006 hearing, at 77). Indeed, the only subject of the Interrogatories which Magistrate Pitman held was not appropriate matter for interrogatories is that portion which asked about a particular witness's knowledge of underreserving. Id.

As you are aware, we encountered a number of difficulties in reviewing the files on the WINS database. Initially, contrary to your statements to Magistrate Pitman at the May 31, 2006 hearing, and your express inquiry of us in open court whether we desired training on the system, no training was provided on June 6. We were required to bring all potential reviewers, consisting of five (5) attorneys and one paralegal, to the review site to make sure that all of our personnel who were to participate in the review was informed about the system. Instead, you provided us with a set of screen prints; the attorney from your firm who accompanied us had not been educated about the system and was unable to answer our questions.

For the first three and one-half days of review (through approximately noon on Friday, June 9, 2006), we were given predominantly non-responsive claim files, in that the vast majority of the files (at least 90%) which we were able to examine during that time, and before Mr. Turcotte's instructions on June 9th to log out of the system and log back in, involved claims which were neither open on 12/31/01 nor opened thereafter instead concerned claims that had been fully resolved before 12/31/01 or involved occurrences which happened after 12/31/01. During this time period, we were required to spend over fifty (50) hours of attorney and paralegal files reviewing claim files of which the majority did not meet your selected criteria.

Additionally, the manner in which the files are stored on the WINS system – and your lack of instructions about same – created a situation in which our review of claim files resulted in either incomplete review of all data about the single "claim" or "occurrence" or the serious possibility of duplicate review of material on the same claim. We understand that the WINS system database allows claims files to be accessed by a number of criteria, including: (1) numerically by claim number, (2) alphabetically by insured name, and (3) alphabetically by claimant name. It is not clear to us if there are other, more useful ways to review claims files.

Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
July 10, 2006
Page 3

On June 6, 2006, and in the absence of any training or list of claims, we asked how to begin our review. The attorney on site was unable to tell us how to do so, and we were forced to contact you by phone and were told to review the claims *alphabetically by claimant*. As we learned after some time proceeding in this fashion, this was an unworkable process because any single "claimant" could be featured in multiple claims, and each claim can have multiple claimants.

In other words, there is no one-to-one relationship between claimants or claim numbers or insureds. By way of example of a typical file, a cab operated by Adams dba Mercury Taxi carrying passenger Baker strikes a car driven by Cooper with passenger Davis. This "claim" would result in one claim file number, consisting of as many as six (6) "claimants" – Adams (workers' compensation/personal injury), Baker (personal injury), Mercury (property damage), Cooper (property damage), Cooper (personal injury) and Davis (personal injury). Each "claimant" is given a separate two-digit "claimant" number and a separate reserve; where a claimant has both property damage and bodily injury claims, there will be two claimant numbers and reserves for each.

Thus, your instructions to access claim file information on the WINS database through an alphabetical search by claimant routinely created one of two different problems:

(1) If we reviewed only that claimant's file (e.g., Adams), without reviewing all of the entries for the remaining claimants for the same claim (e.g., Baker, Cooper, Davis and Mercury), the review would not include the full context of a single claim or occurrence (typically an auto accident). Moreover, since the claims adjuster notes for a single claim appear to be identical for all claimants, a review of those notes for claimant Adams would be duplicated during reviews (perhaps by another reviewer) of the Baker, Cooper, Davis and Mercury files. No reviewer could check whether any given claim file had been reviewed previously, since Mr. Turcotte confirmed that the list of all claim numbers which are subject to the review are not organized; cross-checking against a master list of claims has been impossible.

(2) Alternatively, if we reviewed all claimant files for a single claim seriatim (e.g., Adams, Baker, Cooper, Davis and Mercury), the absence of an ordered master list of claims produced renders it very difficult to prevent duplicate reviews of the same claim file when a reviewer reaches different parts of the alphabet. In other words, it is very easy for a claim to be reviewed in its entirety once during the "Adams" review, without any method of preventing the full review again when the Baker, Cooper, Davis or Mercury names come up.

Also, your list of "underreserved" claim files (however you may be using that term) does not indicate whether you deem every claimant file within an enumerated claim to be "underreserved" or whether you deem only certain of those files to be "underreserved." We do note that there were several duplicate claim numbers in your list of "underreserved" claim files; because there

Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
July 10, 2006
Page 4

was no cover letter, narrative or other explanation provided with the list, we do not know the reason for these duplicate numbers.

Magistrate Pitman expressed the clear intent that "identification of the claims that plaintiff alleges were under-reserved I thin[k] is a fair subject for discovery here ...." Transcript, May 31, 2006 hearing, at 77. To give us an unexplained list of claim file numbers – and no more information – and tell us to find the remaining information sought in the Interrogatories by examining the claims through the protocol discussed above does not comply with the Magistrate's ruling.

We were able to devise a review protocol (without any training) which we hoped might eliminate the possibilities of piecemeal or duplicative reviewing, by examining these files alphabetically by insured. We have, however, no way to confirm that this protocol will eliminate either problem, and have some concerns that it would not. (For example, we believe that an insured "Adams dba Mercury Taxi" will appear perhaps as many as three different places: under "Adams," "Mercury" and even under "dba").

Even upon reaching a review protocol which may potentially resolve some of these issues, a review of the approximately seven thousand (7,000) claims which you have produced in response to our request would be lengthy, highly burdensome, and extremely costly to the Defendants, for a number of reasons, and even then we question whether it would yield the information you were ordered to provide – the claims you allege were underreserved.

- Each individual claim file has the possibilities of multiple claimants, with some having as many as nine or ten claimants. Because the WINS system is a DOS-based system, we were required to review multiple screens (in many instances, by backing out through an "F-12" command) in order to obtain the complete reserving and claim history for a particular claim. In some cases, a review of the information for a particular claim requires examiners to access as many as forty or fifty screens or more. Further, no printer was made available to us, requiring us to extract pertinent data ourselves.

- Under your protocol, it will be necessary for us to go back in following the review of the WINS system data to obtain a complete picture of the reserve and activity history on all of these claims, which is what was requested in the Production Requests and Interrogatories referenced above and which the Court ordered you to provide. That review would, in turn, be followed by an examination of the litigation files at ACIC's captive law firm, Jesmer & Harris. A piecemeal review of this information would not permit us to analyze the full reasons for each reserve change at a single sitting on each claim file.

- Information which you have provided to us indicates that all reserve changes on all ACIC claims are documented by "reserve change" forms (see, e.g., KPMG Canada 008791, "If the adjuster determines the reserve level needs to be adjusted, he/she creates a *Reserve Change Form* detailing the claim number and amount of adjustment and submits the form



Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
July 10, 2006
Page 5

- to the claim supervisor for sign-off and approval"), which are not contained within the WINS system, and presumably must be reviewed in hard copy or in another format. Additionally, the WINS system references scanned documents, but the terminals available for our use did not allow access to this information, which appears to include critical material such as correspondence from third parties, medical bills and the like.

- The data you have provided us sheds no further light on your claim that certain enumerated files were "underreserved" or inadequately reserved as of December 31, 2001, which is the point of the Court's order and the Interrogatories referred to above. Nor has anything contained in the version of the WINS system which has been made available to us constitute a "Reserve analysis" for any of the claims we have seen, as requested in Production Requests 18-21, above.

To attempt to expedite the review process, we had asked for four (4) terminals to be provided beginning on the week of June 26, 2006 instead of the two (2) terminals we had been using. Although we were told by the on-site attorney from your firm that four (4) terminals would be made available some time on the afternoon of June 28, 2006, none were made available that day or June 29, 2006. We brought four (4) reviewers to the site on June 28, 2006, and kept them there because you stated early in the morning that the additional terminals would be made available later that day; in response to our inquiries, the on-site attorney did not repudiate this statement and said only that she had no new information. Because of these communications, the two (2) additional reviewers were required to attend the review that day without being able to access the claims files. This is part of a continuing pattern by Plaintiffs of failing to provide information and resources which have been promised in connection with this production, with the attendant financial burden on Defendants.

In short, our preliminary review of claims file data in the manner in which you have made it available to us has imposed a great burden on Defendants to dig through massive amounts of raw on-screen data in an effort to obtain information which is responsive to the Interrogatories and Production Requests mentioned above. Nor does it constitute compliance with Magistrate Pitman's ruling at the May 31 hearing. Consistent with Plaintiffs' production of pages upon pages of irrelevant documents in the past both to this firm and to counsel for co-Defendants (ACIC's office and copier leases, vendor contracts and the like), this tactic has no relationship to the good faith obligation of a party to make relevant documents available to a litigation opponent. Also, the on-screen review, which would require months of review time by multiple reviewers, would not provide anything close to all responsive information.

Accordingly, and without prejudice to their right to obtain review of claims file information under different circumstances, Defendants confirm that at this time, reviewing further claim files under the conditions upon which you have made them available to us gives little of the requested information and at grossly excessive burden and cost. Defendants further confirm that based on our observations above, Defendants cannot accept the production in the manner in which it has been made as satisfying Plaintiffs' obligations to respond to the Court's order and discovery requests quoted in this letter.

Harold J. Ruvoldt, Jr.
Edwards Angell Palmer & Dodge, LLP
July 10, 2006
Page 6

Therefore, Defendants insist upon Plaintiffs' providing responsive answers to the quoted Interrogatories, as modified by Magistrate Pitman on May 31, 2006 to delete the dates referenced in Interrogatories 1(b) through (d) and the corresponding references to those dates in Interrogatories 2(a) and 2(b).

Very truly yours,

**REARDON GOLINKIN & REED**

By:   Karen A. Reardon
       Scott O. Reed

cc:   Lewis J. Liman
       Amy Chung

       John S. Siffert
       Joseph Patrice

       William R. Maguire
       Jeffrey M. Greilsheimer

O:\Dore\KSL\Correspondence\Ruvoldt_Claim file review 07-07-06.wpd