**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**GREAT AMERICAN INSURANCE COMPANY**          :

        **Plaintiff,**          :

    **v.**          :          07 CIV 6498 (RMB)

                  :

**MARTIN L. SOLOMON, et. al.,**          :

        **Defendants.**          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM OF DEFENDANTS KINGSWAY FINANCIAL SERVICES AND AMERICAN COUNTRY HOLDINGS, INC.

Kenneth J. King (KK 3567)
Pepper Hamilton LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
(212) 808-2700

Robert L. Hickok
Christopher J. Huber
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
(215) 981-4000

*Attorneys for Plaintiff Great American Insurance Company*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

  A.  The Interpleader Complaint ........................................................................ 3

  B.  The Kingsway Defendants' Counterclaim.................................................... 3

  C.  The History of the Related Action ............................................................... 5

    1.  Kingsway has Protracted the Discovery Process and Refused to Produce Information Relevant to the Claims and Defenses in the Related Action .................................................. 6

    2.  Kingsway has Repeatedly Refused to Participate Meaningfully in Settlement Discussions ........................................................................................... 8

III.  ARGUMENT ..................................................................................................... 10

  A.  The Counterclaim Should Be Dismissed For Lack of Standing........................ 10

    1.  Standard of Review.......................................................................... 10

    2.  Kingsway and ACHI Lack Standing to Assert a Bad Faith Claim against Great American........................................................................................... 11

  B.  The Counterclaim Should be Dismissed Pursuant to Rule 12(b)(6) for Failure To State a Claim............................................................................................... 13

    1.  Standard of Review.......................................................................... 13

    2.  Plaintiff Has Failed to Plead Facts That Plausibly Demonstrate a Bad Faith Claim.... 14

    3.  Plaintiff Has Failed to Plead Facts That Plausibly Demonstrate a Claim for Punitive Damages........................................................................................... 18

IV.  CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

AT&T Communications v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ....................................14

Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338 (2d Cir. 2006) .....................14

Ballard v. Citizens Casualty Co., 196 F.2d 96 (7th Cir. 1952) ......................................................14

Bean v. Allstate Insurance Co., 403 A.2d 793 (Md. 1979) ...........................................................11

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ....................................................2, 13, 14

Cernocky v. Indemnity Insurance Co., 216 N.E.2d 198 (Ill. App. Ct. 1966) ...............................14

Conley v. Gibson, 355 U.S. 41 (1957) ...........................................................................................13

Cont'l Information System Corp. v. Federal Insurance Co., No. 02 Civ. 4168, 2003 WL
      145561 (S.D.N.Y. Jan. 17, 2003) ........................................................................................11

DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003) ........................................................................13

Flores King v. Encompass Insurance Co., 818 N.Y.S.2d 221 (N.Y. App. Ct. 2006) ...................19

Haddick ex. rel. Griffith v. Valor Insurance, 763 N.E.2d 299 (Ill. 2001) ....................................15

Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327 (S.D.N.Y. 2003) ..................................................18

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ..................................................................................13

Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP, 420 F. Supp. 2d 228
      (S.D.N.Y. 2005) ...................................................................................................5, 6, 7, 16

Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP, No. 03 Civ. 5560, 2006
      WL 1295409 (S.D.N.Y. May 10, 2006) .................................................................................8

Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP, No. 03 Civ. 5560, No. 03-
      5560, 2006 WL 1520227 (S.D.N.Y. June 1, 2006) .......................................................7, 8, 16

Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP, No. 03 Civ. 5560, 2007
      WL 1837133 (S.D.N.Y. June 27, 2007) .................................................................................8

Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP, No. 03 Civ. 5560, 2007
      WL 473726 (S.D.N.Y. Feb. 14, 2007) ...................................................................................8

**Page(s)**

Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99 (2d Cir. 1999) ...............................5

Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434 (D.N.J. 2002) ......................11

McCarter v. State Farm Mutual Automobile Insurance Co., 473 N.E.2d 1015 (Ill. App. Ct. 1985) ..............................................................................................................................11

Meixell v. Superior Insurance Co., 230 F.3d 335 (7th Cir. 2000) ................................................15

New York University v. Continental Insurance Co., 639 N.Y.S.2d 283 (N.Y. 1995) .................18

O'Neill v. Gallant Insurance Co., 769 N.E.2d 100 (Ill. App. Ct. 2002) .......................................18

Pavia v. State Farm Mutual Auto Insurance Co., 605 N.Y.S.2d 208 (N.Y. 1993) ......14, 15, 16, 17

Port Washington Teachers Association v. Board of Education of Port Washington, 478 F.3d 494 (2d Cir. 2007) .....................................................................................................13

Racanova v. Equitable Life Assurance Social of U.S., 634 N.E.2d 940 (N.Y. 1994) .................18

Rent Stabilization Association of City of New York v. Dinkins, 5 F.3d 591 (2d Cir. 1993) .............................................................................................................................10

Robinson v. Government of Malaysia, 269 F.3d 133 (2d Cir. 2001) ............................................10

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007) ..............................................................................9

Schorr v. Guardian Life Insurance Co. of America, 843 N.Y.S.2d 24 (N.Y. App. Div. 2007) .....................................................................................................................................11

Scroggins v. Allstate Inssurance Co., 393 N.E.2d 718 (Ill. App. Ct. 1979) ................................11

Shipping Financial Services. Corp. v. Drakos, 140 F.3d 129 (2d Cir 1998) ................................10

Smith v. General Acc. Insur. Co., 697 N.Y.S.2d 168 (N.Y. 1998) ..............................................14

Taggart v. State Farm Mutual Ins. Co., 707 N.Y.S.2d 452 (N.Y. App. Div. 2000) ....................11

Tellabs, Inc. v. Makor Issues & Rights, Inc., 127 S. Ct. 2499 (2007) ...........................................6

Thompson v. County of Franklin, 15 F.3d 245 (2d Cir. 1994) .....................................................10

Tristman v. Federal Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006) ..........................................10

Page(s)

U.B. Vehicle Leasing, Inc. v. Atlantic Mutual Ins. Co., No. 00-9266, 2004 WL 503279
(S.D.N.Y. Mar. 12, 2004) .................................................................................14, 15, 17

Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc., 454 F. Supp. 2d 62
(E.D.N.Y. 2006)........................................................................................................11

Vecchione v. Amica Mutual Ins.l Co., 711 N.Y.S.2d 186 (N.Y. App. Div. 2000) .......................14

Winn v. Schafer, 499 F. Supp. 2d 390 (S.D.N.Y. 2007) .............................................................10

## STATUTES

Fed. R. Civ. P. 8(a) .......................................................................................................13

## I.     INTRODUCTION

Plaintiff Great American Insurance Company ("Great American") has filed this Interpleader to seek the Court's guidance as to the distribution of the proceeds of its Director's and Officer's Liability Policy Number DOL5741496 ("Policy").[1] That Policy has been substantially eroded by four years of litigation in this Court (the "Related Action"[2]) between Kingsway Financial Services and ACHI (collectively "Kingsway"), on the one hand, and the former directors and officers of American Country Holdings, Inc. ("ACHI") ("Insured Persons"), on the other hand. Kingsway's prosecution of the Related Action has led to the substantial erosion of the Policy with little advancement of the merits of the underlying claims and defenses.

In response to the Interpleader, Kingsway has filed a counterclaim alleging that Great American has breached a duty of good faith and fair dealing by failing to consent to Kingsway's settlement demands in the Related Action. The Counterclaim fails for multiple reasons and should be dismissed by the Court pursuant to Rule 12(b)(6). First, and most importantly, neither Kingsway nor ACHI is an insured under the Policy, and the Counterclaim admits that they have not been authorized by the Insured Persons to pursue a claim against Great American. Under well-settled principles of insurance law, Kingsway lacks standing to enforce the duties of good faith that Great American allegedly owes to the Insured Persons. Therefore the Counterclaim must be dismissed unless and until Kingsway obtains an assignment of rights from the Insured Persons.

---

[1]  Attached as Exhibit A to the Interpleader Complaint.

[2]  <u>Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers, LLP</u>, No. 03 Civ. 5560 (S.D.N.Y.) (RMB) (HBP) ("<u>Kingsway v. PwC</u>").

Second, the Counterclaim also fails to state a claim under Rule 8(a). Under the Supreme Court's decision in <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007), Kingsway has not pled facts sufficient to plausibly demonstrate that Great American has acted in "gross disregard" of the Insured Persons' interests. The mere fact that an insurer rejects a settlement demand for an amount within the policy limits does not establish bad faith. This is particularly true, where, as here, (1) Great American has worked cooperatively with the Insured Persons throughout the course of the Related Action, (2) the Insured Persons have never themselves asserted that Great American wrongfully refused to fund a reasonable settlement demand in the Related Action, and (3) the close to "policy limits" settlement demands made by Kingsway were rejected during the early phases of litigation and the underlying record conclusively demonstrates that liability was, and continues to be, heavily contested and far from clear. In addition, other allegations in the Counterclaim – that Great American "refused" to participate in settlement negotiations – are patently false.

Moreover, even if the Court concluded that Kingsway somehow has standing and the Complaint presented facts from which the Court could plausibly infer bad faith by Great American, it should still dismiss Kingsway's claim for punitive damages. New York law requires that a plaintiff demonstrate "egregious tortious conduct" by an insurer against the insured to obtain an award of punitive damages. Here, the Counterclaim is entirely devoid of any factual allegation that even remotely suggests tortious conduct by Great American, such that the claim must be dismissed.

II.    **STATEMENT OF FACTS**

A.    **The Interpleader Complaint**

Great American filed this Interpleader action in July 2007 in connection with the

Policy.  Complaint ¶ 2.  Pursuant to the Policy, Great American has, under a reservation of rights

advanced reasonable costs of defense of the Insured Persons in the Related Action since 2003.

Id. ¶ 16.  These advancements have substantially eroded Great American's $10 million limit of

liability under the Policy, such that $4.8 million now remains to fund a defense or settlement.  Id.

In July 2007, the Court imposed a stay in the Related Action based on the parties'

representations as to the possibility of a pending settlement as to some, but not all, of the Insured

Persons.  Id. ¶¶ 19-20.  Because the amounts remaining under the Policy are a limited fund, and

because Great American cannot favor one Insured Person over another, it seeks the Court's

guidance, via the Interpleader, as to the allocation of the remaining policy proceeds among the

Insured Persons through this action.  Id. ¶ 21.

B.    **The Kingsway Defendants' Counterclaim**

Kingsway filed its Answer and Counterclaim on November 15, 2007.  The

Counterclaim asserts a single cause of action: that Great American breached its contractual duty

of good faith and fair dealing by "unreasonably refus[ing] to settle or otherwise resolve the

claims asserted by Kingsway against the Insured Persons in the Related Action."  Counterclaim

¶¶ 40-60.  It is noteworthy that Kingsway, and not any of the Insured Persons, makes this

assertion, since Great American has worked cooperatively with the Insured Persons in the

Related Action.  None of the defendants in the Related Action has ever contended that Great

American has wrongfully refused to fund a reasonable settlement demand.

Amazingly, Kingsway expressly admits in its Counterclaim that it has no right to

bring this claim on behalf of any of the Insured Persons.  Instead, Kingsway states that it is in the

process of negotiating a settlement with four of the Insured Persons (the "Outside Directors")

and Kingsway guesses that forthcoming settlement might include an assignment of the Outside

Directors' rights against Great American.  Id. ¶ 53.  Thus, Kingsway alleges:

> Upon the execution of the assignment of the Outside Directors'
> rights against Great American under the Policy, Kingsway and
> American Country will have the right to assert this Counterclaim
> on behalf of the Outside Directors, as well as themselves.

Id. ¶ 54.  There is no allegation that Kingsway has these rights for the simple

reason that it does not.

Notwithstanding its lack of standing to make a bad faith claim, Kingsway alleges

that on three occasions between August 2004 and March 2006, Kingsway offered to settle its

claims in the Related Action for $8.5 million, $8.5 million, and $8 million, respectively.

Counterclaim ¶¶ 41, 43, 47.  In response to these offers, Great American and/or the Insured

Persons made corresponding settlement offers of $500,000, $1.3 million, and $1.75 million.  Id.

¶¶ 42, 45, 48.  Kingsway alleges that these counteroffers were "exceedingly inadequate" because

they failed to take into account Kingsway's "initial assessment of damages" in the Related

Action of $106.6 million.  Id. ¶ 49.  In addition, notwithstanding these counteroffers, Kingsway

alleges that Great American "ceased," "terminated," and "intransigent[ly] refus[ed]" settlement

negotiations.  Id. ¶¶ 48-50.

Kingsway alleges at the time these settlement negotiations occurred "all serious

doubts about the [Insured Persons] liability were removed."  Id. ¶ 55.  However, the

Counterclaim avers no facts in support of this conclusion.  Instead, the remaining allegations

regarding the Related Action consist of highly generic and conclusory statements regarding

Great American's conduct.  For example, Kingsway alleges that Great American's refusal to

accept its prior settlement offers evidenced "a gross disregard" and "a conscious or knowing indifference" towards the interests of the Insured Persons.  Id. ¶¶ 57-58.

### C.    The History of the Related Action

On July 25, 2003, Kingsway filed the Related Action arising out of its 2002 acquisition of ACHI.  See Exhibit 1 to the Declaration of Kenneth J. King ("King Decl.")(Docket No. 03 CV 5560 (RMB) (S.D.N.Y.)) at 1 ("Docket").[3]  The complaint named the Insured Persons, Pricewaterhouse-Coopers ("PwC"), and Miller, Herbers, Lehman & Associates, as Related Action Defendants (collective "Related Defendants.").  Kingsway v. PwC, 420 F. Supp. 2d. 228, 230 (S.D.N.Y. 2005).  The Complaint alleged, inter alia, that "from 1999 through 2002 … Defendants … fraudulently caused and maintained an inflated stock price of ACHI by understating … insurance loss reserves …."  Id.  Pursuant to those allegations, Kingsway sought recovery under Sections 10(b), 14(e) and 20(a) of the Securities Exchange Act of 1934, as well as common law fraud, negligence, and negligent misrepresentation.  Id. at 230-231.  Kingsway also asserted claims on behalf of several of its wholly-owned subsidiaries and ACHI.

Between July 2003 and November 2005, Kingsway amended its Complaint three times while the Court resolved multiple motions to dismiss.  Docket at 26, 32, 58, 62, 67.  In March 2005, the Court granted in part Related Defendants' Motion to Dismiss the Second Amended Complaint, in which it dismissed with prejudice (1) all claims against two Related Defendants; (2) the Section 14(e) claims as to all Related Defendants; and (3) the negligence and negligent misrepresentation claims against PwC.  Kingsway v. PwC, 420 F. Supp. 2d. at  231.  While the Court declined to dismiss Kingsway's Section 10(b) and fraud claims in their entirety,

---

[3]  The public record of the Related Action is integral to Kingsway's claim that Great American has acted in bad faith by refusing to consent to a settlement in the Related Action, and is subject to judicial notice.  Therefore, the record may properly be considered by the Court on a motion to dismiss pursuant to Rule 12(b)(6).  See Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999).

the Court acknowledged that it was required to draw all reasonable inferences from the

Complaint in Kingsway's favor on the issue of scienter.[4]  See King Decl. Ex. 2 (Or. of March 29,

2005.)  Subsequently, in November 2005, the Court also dismissed all of the claims brought by

Kingsway's subsidiaries because they could not establish that any losses were caused by Related

Defendants conduct.  Kingsway v. PwC, 420 F. Supp. 2d. at 233-34.

        Although the Court did not dismiss Kingsway's Complaint in its entirety, the

remaining Related Defendants, including the Insured Persons, have "vigorously challenged" and

"interposed significant answers" to Kingsway's claims.  King Decl. Ex. 4 at 2 (Mar. 29, 2006

Ltr. from L. Liman to the Hon. H. Pittman); Ex. 3 at 2 (Dore Nov. 30, 2007 Mot. to Quash) ("All

Defendants have adamantly denied Kingsway's allegations [of fraud].")  Among other things,

Insured Persons have challenged Kingsway's assertion that its insurance reserves were

established in violation of Generally Accepted Accounting Principles ("GAAP"), and have

represented to the Court that such an allegation "has no foundation."  King Decl. Ex. 4 at 3.  The

Insured Persons have also asserted that Kingsway's restatement of ACHI's loss reserves was the

result of Kingsway's engagement in fraudulent earnings management, and not any misconduct

by ACHI.  Id. at 3-6.  Further, the Insured Persons have, at all times, asserted that Kingsway's

$106.6 million damage claim is insupportable.  Id. at 6.

### 1.    Kingsway has Protracted the Discovery Process and Refused to Produce Information Relevant to the Claims and Defenses in the Related Action

        In support of their defenses, the Related Defendants have sought basic discovery

from Plaintiffs and third parties over the past two and a half years.  The Related Defendants have

---

[4]  Defendants have moved for reconsideration of the March 29, 2005 Order in light of the Supreme Court's recent decision in Tellabs, Inc. v. Makor Issues & Rights, Inc., 127 S. Ct. 2499 (2007).

pursued this discovery out of necessity – including the files relating to ACHI's loss reserves and Kingsway's restatement of those reserves, which are in Kingsway's possession, and which either prove Kingsway's claims or establish Related Defendants' defenses. However, Kingsway has repeatedly obstructed and protracted the discovery process, necessitating the "extensive motion practice and discovery," the consequences of which it now complains. While a complete recitation of these discovery disputes is unnecessary, the following examples are relevant to this motion:

☐ On December 28, 2006, after five months of litigation, Magistrate Judge Pitman ordered Kingsway to produce responsive documents from electronic sources other than its active servers due to the "paucity of relevant e-mails" that Kingsway had produced from other sources in 2005-06. Docket at 133. That order was affirmed by the Court on March 5, 2007. Id. at 156. Kingsway has never fully complied with that order. Instead, it first simply ignored the Court ordered deadline for production, and then, when Related Defendants complained, sought unjustified extensions (none of which were granted by the Court). See King Decl. Ex. 5 (Apr. 26, 2007 Ltr. from M. Lowenthal to the Hon. H. Pitman); Docket at 170, 177. Kingsway's failure to comply with the Court's orders is the subject of Related Defendants' pending Motion for Sanctions. Docket at 171.

☐ In 2006, the Related Defendants sought discovery with respect to the particular claims files that Kingsway contends were under-reserved at the time of its acquisition of ACHI. When Kingsway refused to respond to Related Defendants' Interrogatories, Magistrate Judge Pitman ordered Kingsway to provide Related Defendants with access to electronic databases for four weeks in order to review those files. Kingsway v. PwC, No. 03-5560, 2006 WL 1520227, at *6 (S.D.N.Y. June 1, 2006). While Kingsway provided Related Defendants with access to computers, it refused to provide adequate training on the system and/or inform Related Defendants how to search for the relevant claims files. See King Decl. Ex. 6 (July 10, 2006 Ltr. from S. Reed to H. Ruvoldt).

☐ The Related Defendants have been unable to obtain meaningful discovery with respect to Kingsway's claimed damages. Kingsway's Rule 26(a)(1) disclosures merely provided an "initial estimate" of the various categories of damages totaling $106.6 million. See King Decl. Ex. 7 (Excerpts from Plaintiff's Rule 26(a)(1) disclosures). When Related Defendants moved to compel further Rule 26 disclosures regarding the basis of the damages calculations, Kingsway objected on the basis that it could only prove these damages by expert testimony. Kingsway, 2006 WL 1520227, at *1. The Court has ordered Kingsway to identify the documents that it has submitted to its damages expert. Id. However to this day, Kingsway has refused to respond to other discovery requests requesting information regarding its claimed

damages.  See King Decl. Ex. 8 (July 17, 2007 Ltr. from J. Greilsheimer to the Hon. H. Pitman).  Moreover, expert discovery has yet to begin, such that Kingsway has never produced an expert report on damages.[5]

In sum, Defendants have pursued discovery directly related to the claims and merits of their defenses, and Kingsway has repeatedly stymied that discovery.  Moreover, the record demonstrates that the Court has regularly found Kingsway's objections to discovery to be without merit.  See Kingsway v. PwC, 2006 WL 1295409 (S.D.N.Y. May 10, 2006) (granting Related Defendants' motion to compel); Kingsway v. PwC, 2006 WL 1520227 (S.D.N.Y. June 1, 2006) (same); Kingsway v. PwC, 2007 WL 473726 (S.D.N.Y. Feb. 14, 2007) (same); Kingsway v. PwC, 2007 WL 1837133 (S.D.N.Y. June 27, 2007) (same).  Indeed, the docket in the Related Action confirms that the Court has ordered Kingsway to comply with its discovery obligations no fewer than thirteen times between April 2006 and June 2007.[6]

### 2.    Kingsway has Repeatedly Refused to Participate Meaningfully in Settlement Discussions

Though Kingsway's Counterclaim only addresses three exchanges between April 2004 and February 2006, the underlying record proves that Great American has engaged in settlement discussions with the parties throughout the pendency of the Related Action.  Those discussions (including formal mediation and conferences before the Court) have proven fruitless, primarily because Kingsway has been unwilling to reduce its settlement demand since November 2005 – over two years ago, when the Court resolved the final motion to dismiss.

---

[6] Docket at 99 (ordering Kingsway to produce documents withheld on privilege grounds), 102 (ordering Kingsway to comply with prior order to produce documents), 104 (ordering Kingsway, inter alia, to produce documents supplied to damages expert), 109 (ordering Kingsway to engage in a rolling production of electronic documents), 115 (ordering Kingsway to organize its document production), 124 (denying Kingsway's motion for an extension of time to comply with discovery), 133 (ordering Kingsway to produce documents from electronic archives), 145 (ordering Kingsway to produce additional documents withheld on privilege grounds), 156 (affirming Kingsway's obligation to produce documents from its electronic archives), 170 (denying Kingsway's application for further extension of discovery deadlines), 177 (same), 178 (ordering Kingsway to produce documents withheld as privileged), 179 (requiring production of timely privilege log).

As described in the Counterclaim, when Kingsway made its initial $8.5 million settlement offer in April 2004, the Insured Persons provided a counteroffer of $500,000. Kingsway rejected the counter-offer but declined to make an additional counter-offer or engage in further discussions with the Insured Persons. See King Decl. Ex. 9 (Jan. 10, 2005 Ltr. from H. Ruvoldt to L. Liman).[7] Instead, it simply reiterated its prior demand of $8.5 million. Id. Similarly, in August 2005, Great American invited Kingsway to participate in formal mediation as a means to achieve a settlement. Kingsway declined, and simply reiterated its $8.5 million demand to Great American directly. Counterclaim ¶ 43. In response, Great American and the Insured Persons increased their counteroffer to $1.3 million on October 11, 2005. Id. ¶ 45. One month later, Kingsway reduced its settlement demand by $500,000 to $8 million. Id. To this day, Kingsway's $8 million offer remains its lowest settlement demand.

Great American ultimately responded to Kingsway's settlement demand with a February 2006 offer of $1.75 million. Id. ¶ 48. In connection with the offer, Great American also continued to inform Kingsway that it was willing to engage in formal mediation to resolve the dispute. Once again, Kingsway rejected the offer, declared its view that Great American was in bad faith, and walked away from the table. See King Decl. Ex. 10 (March 3, 2006 Ltr. from H. Ruvoldt to J. Siffert).

Though Kingsway falsely contends that Great American ceased all negotiations at this time, the Court subsequently scheduled a settlement conference for July 31, 2006. At the last minute, Kingsway sought to postpone that conference on the grounds that it was not prepared to engage in meaningful negotiations. See King Decl. Ex. 11 (July 25, 2006 Ltr. from H.

---

[7]. Correspondence related to the settlement negotiations that are the subject of Plaintiff's Counterclaim are integral to the pleading, and properly before the Court on a Rule 12(b)(6) Motion. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

Ruvoldt to the Hon. R. Berman). However, the Court ordered that the conference go forward,

and then referred the case to binding mediation. Docket at 118. In response to that order, Great

American participated in three mediation sessions on October 16, 2006, March 16, 2007, and

June 1, 2007. See King Decl. Ex. 12 (Aug. 6, 2007 Ltr. from H. Ruvoldt to the Hon. R.

Berman). Great American has continued to inform the Court that it is willing to keep working

though the mediation process. King Decl. Ex. 13 at 2 (July 20, 2007 Ltr. from J. Skarzynski to

the Hon. R. Berman). Kingsway, for its part, has advised the Court that it is no longer willing to

engage in formal mediation. See King Decl. Ex. 12 at 1.

## III.    ARGUMENT

### A.    The Counterclaim Should Be Dismissed For Lack of Standing

#### 1.    Standard of Review

A motion to dismiss for lack of standing is properly made pursuant to Rule

12(b)(1). Thompson v. County of Franklin, 15 F.3d 245, 247-48 (2d Cir. 1994). Where, as here,

the moving party challenges the claimant's standing based on the allegations of the pleading, the

Court must accept the well-pleaded facts of the Complaint as true. See Tristman v. Federal

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, "[j]urisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir 1998).

Conclusory allegations of law are insufficient to survive a motion dismiss under Rule 12(b)(1).

Robinson v. Gov't of Malaysia, 269 F.3d 133, 146 (2d Cir. 2001).[8]

---

[8] The Second Circuit has recognized that a motion to dismiss for lack of standing may be resolved under
Rule 12(b)(1) or Rule 12(b)(6), though it is more properly made under Rule 12(b)(1). Rent Stabilization Ass'n of
City of New York v. Dinkins, 5 F.3d 591, 594 (2d Cir. 1993). Great American submits that because the issue of
Kingsway's standing can be resolved on the basis of the allegations of the Counterclaim, any difference in the

(continued...)

**2.    Kingsway and ACHI Lack Standing to Assert a Bad Faith
Claim against Great American**

The Counterclaim must be dismissed for lack of standing. New York law does

not recognize extra-contractual claims for the bad faith performance of insurance obligations.

E.g., Cont'l Info. Sys. Corp. v. Fed. Ins. Co., No. 02-4168, 2003 WL 145561, at *2-3 (S.D.N.Y.

Jan. 17, 2003). The duty of good faith and fair dealing arises out of the terms of the insurance

agreement, and may not be enforced by non-parties to those obligations. Union Cosmetic Castle,

Inc. v. Amorepacific Cosmetics USA, Inc., 454 F. Supp. 2d 62, 64 (E.D.N.Y. 2006) ("It is

elementary that no covenant of good faith and fair dealing arises in the absence of a contract.");

Schorr v. Guardian Life Ins. Co. of Am., 843 N.Y.S.2d 24, 25 (N.Y. App. Div. 2007) (Plaintiff

failed to state a claim for breach of the covenant of good faith and fair dealing in the absence of a

contract); Taggart v. State Farm Mut. Ins. Co., 707 N.Y.S.2d 452, 453 (N.Y. App. Div. 2000)

(same). Therefore, only an insured (or an assignee of the insured) has standing to enforce the

covenant of good faith and fair dealing with respect to an insurer's failure to settle a claim within

policy limits.[9] See e.g, Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434, 454

(D.N.J. 2002) ("Unless the insured/debtor, to whom the insurer owes the duty, assigns his rights

in the contract to the creditor, the creditor cannot proceed against the insurance company for bad

faith settlement negotiations."); Bean v. Allstate Ins. Co., 403 A.2d 793, 794-95 (Md. 1979)

------

(continued...)

standard of review is immaterial to the outcome of this motion. See Winn v. Schafer, 499 F. Supp. 2d 390, 395
(S.D.N.Y. 2007).

[9] Illinois law similarly provides that only an insured (or its assignee) has standing to pursue bad faith
claims against the insurer for failure to settle within policy limits. See McCarter v. State Farm Mut. Auto Ins. Co.,
473 N.E.2d 1015, 1018 (Ill. App. Ct. 1985); Scroggins v. Allstate Ins. Co., 393 N.E. 2d 718, 720-21 (Ill. App. Ct.
1979).

("[T]he insurer owes no duty to a claimant to settle a claim … any obligation to deal with settlement in good faith runs only to the insured.").

The Counterclaim does not (because it cannot) allege that either Kingsway or ACHI is insured under the Policy with respect to the Related Action. Indeed, it recognizes as much. See Counterclaim ¶¶ 53-54. To be clear, Kingsway is not an insured under the Policy, and ACHI is not insured with respect to the Related Action.

Section III.I of the Policy defines "Insured(s)" as "the Insured Entity and all Insured Persons." Policy § III.I. However, the claims in the Related Action are only asserted against the Insured Persons.[10] The express terms of the Policy make clear that Great American's obligations with respect to settlement of any Claim run only to the "Insureds" at issue. Section VII.A of the Policy provides, in relevant part:

> The Insureds shall not incur Costs of Defense, or admit liability, offer to settle, or agree to any settlement in connection with any Claim without the express written consent of the Insurer, whose consent shall not be unreasonably withheld.

Id. § VII.A. Thus, with respect to the claims in the Related Action, any duties owed by Great American run to the Insured Persons, not anyone else. Kingsway has no standing to enforce any such duties or contractual obligations.

The Counterclaim acknowledges as much in its attempt to manufacture standing by alleging that Kingsway "will have the right to assert this Counterclaim on behalf of the Outside Directors" if, in the future, it executes an assignment agreement as part of a settlement

---

[10]   Section III.J of the Policy defines the "Insured Entity" as "the Company" (ACHI and its subsidiaries), "*but only* with respect to coverage provided under Insuring Agreement I.C." Id. § III.J (emphasis added). Accordingly, ACHI is only insured under the agreement with respect to Section I.C, which addresses securities claims brought against ACHI directly. Id. (Policy, Run Off Coverage § (5)(I)(C)). As acknowledged in the Counterclaim, the claims in the Related Action only implicate Sections I.A and I.B of the policy. Counterclaim ¶ 37.

agreement.  Counterclaim ¶ 54.  It is black letter law that this Court lacks jurisdiction to hear

from a plaintiff whose claimed injuries are "conjectural" or "hypothetical."  <u>Port Washington</u>

<u>Teachers Ass'n v. Board of Educ. of Port Washington</u>, 478 F.3d 494, 499 (2d Cir. 2007).  Six

months ago, Kingsway and ACHI asked this Court to stay all proceedings as to the Outside

Directors on their representation that a settlement was imminent.  Docket at 184.  To this day, no

settlement has been reached.  Unless and until Kingsway obtains an assignment of rights from

the Outside Directors, they lack standing to bring any bad faith claim on their behalf.  Therefore,

the Counterclaim must be dismissed.

### B.    The Counterclaim Should be Dismissed Pursuant to Rule 12(b)(6) for Failure To State a Claim

#### 1.    Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all

factual allegations in the complaint and draw all inferences from the facts alleged in the light

most favorable to the plaintiff.  <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2d Cir. 2003).  While

Rule 8 requires only "a short and plain statement showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a), a motion to dismiss should be granted where the plaintiff is unable to plead

"enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>,

127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" language from <u>Conley v. Gibson</u>,

355 U.S. 41, 45-46 (1957)).  A complaint must include more "than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 1965.  In the wake of

<u>Twombly</u>, the Second Circuit has made clear that the court reviews the sufficiency of a pleading

under a "flexible plausibility" standard.  <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007).

Under that standard, "the pleader is required to amplify a claim with some factual allegations in

those contexts where such amplification is needed to make such a claim plausible"  <u>Id.</u>; <u>see also</u>

AT&T Communications v. Shaar Fund, Ltd., 493 F.3d 87, 98 n.2 (2d Cir. 2007) ( "plausibility"

requirement applies to all claims under Rule 8).  A court need not credit a complaint's "bald

assertions" or "conclusions of law." Amron v. Morgan Stanley Inv. Advisors Inc.,  464 F.3d

338, 344 (2d Cir. 2006).

### 2.    Plaintiff Has Failed to Plead Facts That Plausibly Demonstrate a Bad Faith Claim

Under New York law, a claim for bad faith refusal of settlement lies where "the

insurer's conduct constituted a gross disregard of the insured's interests – that is a deliberate or

reckless failure to place on equal footing the interests of its insured's with its own interests when

considering a settlement offer."[11] Smith v. General Acc. Ins. Co., 697 N.Y.S.2d 168, 171 (N.Y.

1998) quoting Pavia v. State Farm Mut. Auto Ins. Co., 605 N.Y.S.2d 208, 211 (N.Y. 1993).  Bad

faith is not established by a claim that an insurer simply refused an offer of settlement within the

policy limits, or that the insurer proposed a low counteroffer to a settlement demand. Id. at 212;

see also U.B. Vehicle Leasing, Inc. v. Atlantic Mut. Ins. Co., No. 00-9266, 2004 WL 503279, at

*6-7 (S.D.N.Y. Mar. 12, 2004) (insurer did not act in bad faith by making counteroffers between

$300,000-$700,000 in response to settlement demands of $1-3 million);  Vecchione v. Amica

Mut. Ins. Co., 711 N.Y.S.2d 186, 189 (N.Y. App. Div. 2000) (terms of counteroffer to settlement

demand did not demonstrate bad faith).  Rather, the plaintiff must demonstrate that the insured

"lost an actual opportunity to settle the claim at a time when all serious doubts about the

---

[11]  The Illinois cause of action for bad faith refusal of settlement similarly requires that the insurance company fail to "give the interests of the insured equal consideration with its own interests and…deal fairly with the insured." Cernocky v. Indemnity Ins. Co., 216 N.E.2d 198, 204 (Ill. Ct. App. 1966) (quoting Ballard v. Citizens Cas. Co., 196 F.2d 96, 102 (7th Cir. 1952)).

insured's liability were removed." Pavia, 605 N.Y.S.2d at 212; see also N.Y. JUR. 2D (INS.) § 1911 (West 2007).[12]

The Counterclaim dutifully pleads these elements of the New York bad faith action, but only in conclusory terms. See Counterclaim ¶¶ 55-57. Under Twombly, Kingsway has failed to plead sufficient facts to plausibly demonstrate that Great American has acted in "gross disregard" of the Insured Person's interests in the ongoing settlement negotiations in the Related Action.

As described above, the Counterclaim alleges that Kingsway and ACHI made three settlement offers of $8.5 million, $8.5 million, and $8 million to the Insured Persons and/or Great American between August 2004 and November 2005. Id. ¶¶ 40-49. The Insured Persons and/or Great American responded to all of those offers with counteroffers of $500,000, $1.3 million, and $1.75 million, respectively. Id. Kingsway declined each of those offers and subsequent negotiations did not ensue. Id. These allegations alone are insufficient to state a claim for bad faith. At best, they demonstrate that Great American refused to consent to three offers of settlement within policy limits. Without further factual support, the Court cannot infer that Great American was acting in disregard of its insured's interests in rejecting those offers. Pavia, 605 N.Y.S.2d at 212; U.B. Vehicle Leasing, Inc., 2004 WL 503279, at *6-7.[13] Indeed, the only plausible inference that could be drawn is that Great American was engaged in negotiating a potential settlement.

---

[12] Illinois law similarly provides that an insurer does not have a duty to settle a third party claim unless the insured can demonstrate " a reasonable probability of recovery in excess of policy limits and a reasonable probability of finding liability against the insured." Haddick ex. rel. Griffith v. Valor Ins., 763 N.E.2d 299, 304 (Ill. 2001).

[13] See also Meixell v. Superior Ins. Co., 230 F.3d 335, 337 (7th Cir. 2000) (Under Illinois law, the mere refusal of an offer by an insurer to settle litigation within policy limits does not demonstrate a claim for bad faith).

Stripped of rhetoric, the Counterclaim alleges two sets of facts to support its contention that Great American refused settlement in bad faith. First, the Counterclaim avers that Kingsway claimed damages in excess of $106.6 million in the Related Action, and that Great American's counter-offers refused to take that amount into account. Counterclaim ¶¶ 41, 47. Moreover, Kingsway alleges that Great American failed to do so "when all serious doubts about [the Insured Persons'] liability were removed." Id. ¶ 55.

While it is true that an insurer's refusal to settle in the face of clear excess liability may be evidence of bad faith, Pavia, 605 N.Y.S.2d at 212, the underlying judicial record makes clear that Kingsway's damages were highly speculative and highly contested at the time of the settlement offers (and remain so). For example, the Counterclaim complains that the Insured Persons' first alleged counter-offer in 2004 was made for "less than one half of one percent" of Kingsway's claimed damages. Counterclaim ¶ 42. However, at the time of the offer the Related Action was only in the pleadings stage, and it was unclear whether Kingsway's amended complaints would be dismissed in their entirety. See Sec. I.C., supra. Indeed, the Court subsequently dismissed substantial portions of Kingsway's claims. See Kingsway v. PwC, 450 F. Supp. 2d at 231, 236. When the second and third offers of settlement were made, the Related Action was in the preliminary stages of discovery. Related Defendants were aggressively seeking discovery to evaluate Kingsway's claims, but Kingsway regularly refused that discovery. See Sec. I.C.1, supra. In addition, Kingsway refused to provide any explanation of its damages beyond what was listed in its initial disclosures, and ultimately admitted that those damages could only be proven by expert testimony. Kingsway v. PwC, 2006 WL 1520227, at *1. Kingsway's damages expert has never been deposed; his report has never been produced; and to this day, Kingsway refuses to provide an explanation of its damages claims. See Sec. I.C.1,

supra.  At bottom, liability and damages have been vigorously contested throughout the Related

Action, with Kingsway systematically attempting to block discovery on these issues.  The

litigation record is entirely contrary to the Counterclaim's conclusion that all doubts to Insured

Persons' liability were removed at the time of Kingsway's settlement offers.  Accordingly,

Kingsway's assertion that Great American ignored its damages claim is insufficient to plausibly

support an allegation that Great American has acted in bad faith.  Pavia, 605 N.Y.S.2d at 212;

U.B. Vehicle Leasing, Inc., 2004 WL 503279, at *6-7.

Second, the Counterclaim attempts to support its conclusions through its

allegations that Great American repeatedly "ceased" "terminated, and "intransigent[ly]

refus[ed]" to engage in settlement negotiations.  Counterclaim ¶¶ 48-50.  However, the

Counterclaim admits that Great American and the Insured Person's have responded to every

settlement demand made by Kingsway, and that Kingsway declined to provide a counter-offer to

Great American's $1.75 million settlement offer in March 2006.  Counterclaim ¶ 49.  More

importantly, contrary to Kingsway's assertion that Great American ceased all negotiations, the

litigation record establishes Great American has continued to engage in settlement efforts beyond

March 2006, including multiple settlement conferences before the Court and three formal

mediation sessions since October 2006.  See Sec. I.C.2, supra.  Great American continues to be

willing to engage in all settlement proceedings, while Kingsway has refused further mediation.

Id.  Thus, because the Counterclaim's assertions are belied by the judicial record, Kingsway's

"facts" regarding Great American's refusal to engage in settlement negotiations also do not

create a bad faith claim.

In sum, Kingsway has conducted the Related Action in a manner designed to

maximize litigation expense, block discovery of the merits of the claims and defenses, and

frustrate the possibility of meaningful settlement discussions.  But in the absence of any facts that plausibly demonstrate that Great American has acted in gross disregard of the interests of the Insured Persons, the Counterclaim should be dismissed.

### 3.    Plaintiff Has Failed to Plead Facts That Plausibly Demonstrate a Claim for Punitive Damages

Even if the Court determined that the Counterclaim pled a proper bad faith claim, the Court should still dismiss Kingsway's claim for punitive damages.  In order for a bad faith claim to support an award of punitive damages, "the complaint must first state a claim of egregious tortious conduct directed at the insured claimant.  Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages."  Racanova v. Equitable Life Assur. Soc. of U.S., 634 N.E.2d 940, 945 (N.Y. 1994); see also Helprin v. Harcourt, Inc., 277 F. Supp.2d 327, 340-341 (S.D.N.Y. 2003) (dismissing claim for punitive damages in the absence of allegations of egregious tortious conduct).  Such allegations are required because punitive damages are limited to cases where the insurer exhibits "wanton dishonesty so as to imply a criminal disinterest to civil obligations directed at the public generally."  New York Univ. v. Continental Ins. Co., 639 N.Y.S.2d 283, 287 (N.Y. 1995).[14]

Here, the Counterclaim does not even attempt to meet this rigorous standard.  It is simply a recitation of competing settlement offers consistent with ordinary negotiations in contested litigation.  Even construed in Kingsway's favor, the allegations merely present "a private breach of contract dispute between the insurers and their insureds with no greater

---

[14]  Similarly, under Illinois law, punitive damages are only supported by allegations that the insurer's conduct constitutes "utter indifference and reckless disregard" for the insured's interest.  See O'Neill v. Gallant Ins. Co., 769 N.E.2d 100, 109 (Ill. App. Ct. 2002).

implications." <u>Flores King v. Encompass Ins. Co.</u>, 818 N.Y.S.2d. 221, 222 (N.Y. App. Ct. 2006). The punitive damages claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Great American respectfully requests that Kingsway's Counterclaim be dismissed.

Dated: January 10, 2008

Respectfully submitted,

_____
Kenneth J. King (KK 3567)
Pepper Hamilton LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
(212) 808-2700

Robert L. Hickok
Christopher J. Huber
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Attorneys for Plaintiff Great American
Insurance Company