Tender Offer. Kingsway relied upon this SEC filing, PwC's opinions and the statements of these Defendants therein when making its Tender Offer.

336. Defendants Solomon, Dore, Elder, Barrett, Thomas and Violetto misleading 2001 10-K was bolstered by PwC's unqualified independent audit which provided that:

> In our opinion, <u>the accompanying consolidated balance sheets and the related consolidated statements of income, stockholders' equity, and cash flows present fairly, in all material respects, the financial position of American Country Holdings Inc. and Subsidiaries (the "Company")</u> at December 31, 2001 and 2000, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2001, in conformity with accounting principles generally accepted in the Untied States of America. These financial statements are the responsibility of ACHI's management; our responsibility is to express an opinion on these financial statements based on our audits. <u>We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatements.</u> An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. <u>We believe that our audits provide a reasonable basis for our opinion.</u> (See page F-13 of ACHI's 2001 10-K)(emphasis added) (See 2001 10-K)

337. By issuing its unqualified audit, PwC violated the rules of GAAP, GAAS, AUI, and SAS 82 as set forth in, but not limited to ¶ 9 of the Complaint.

338. In light of PwC's knowledge of the actuarial analysis of ACHI and the $15 million reserve adjustment for the period ending September 30, 2001, PwC knew that ACHI's financials as set out in the 2001 10-K were false and did not set forth the true financial condition of ACHI.

339. PwC's issuance of an unqualified audit should not have been given since PwC knew that ACHI's board minutes, which PwC had to review in connection with its audit, clearly showed

that both Violetto, ACHI's CFO, and Gennett, ACHI's actuary, knew that the financial information provided by ACHI was materially untrue.

340. PwC provided ACHI with an unqualified opinion, despite their knowledge that the financial information was false. In failing to acknowledge Defendants Solomon, Barrett, Dore, Elder, Thomas, and Violetto gross misstatement of reserves in ACHI's financials, PwC did not meet the standards for auditing established under GAAS.

341. Kingsway reviewed and reasonably relied upon ACHI's 2001 10-K in determining whether it wanted to acquire ACHI's outstanding stock pursuant to the Tender Offer. The financial information stated in the 2001 10-K was critical to Kingsway's purchase of ACHI in light of ACHI's rating drop to "C++" by Best. Gennett advised Dore that ACHI would experience adverse loss development after the Acquisition. Despite knowing that this adverse risk development was a material condition pursuant to the Tender Offer, and being aware that Kingsway could rescind the Tender Offer based on such materially adverse information, Dore willfully refused to inform Kingsway of the development and instead assured them that the reserves were proper and the 10K was accurate.

342. On or about April 5, 2002, the Tender Offer between KFS Acquisition Corp. and ACHI was completed. Pursuant to its policy with respect to the CEOs of acquired companies, Kingsway retained Defendant Dore as the CEO of ACHI. At the time the decision was made, Kingsway was unaware that the financial statements provided by ACHI were false and was unaware of the fraud perpetrated by the Defendants, including Dore.

343. Thereafter, on or about April 10, 2002, Defendant Dore sent Kingsway CFO Shaun Jackson two copies of ACHI's consolidated financial statements for the period ending December 31, 2001 by overnight mail. At all times, the financial information provided to

Kingsway was based on financial statements that contained inadequate reserve estimates and false tax estimates – both of which were material.

344. Defendant Dore further informed Kingsway in his letter on or about April 10, 2002 that ACHI was in the process of preparing its consolidated financial statements for the first quarter of 2002. Defendant Dore coordinated the financial presentation to ensure the cover up of the fraud and his role in it. Thereafter, Defendant Dore forwarded Kingsway the financials for the first quarter for the period ending March 31, 2002. The consolidated financial statements for the period ended March 31, 2002 were materially misleading in that they did not reflect the material reserve deficiencies for the period ending December 31, 2001 and tax problems.

345. On or about June 30, 2002, the internal actuary identified that reserves for year ended December 31, 2001 had been underreported and undervalued by at least $10 million and recommended immediately supplementing reserves in that amount. This was the first time Kingsway became aware that ACHI's reserves were materially and grossly understated and actuarially unsound.

346. On or about July 3, 2002, Robert Osei-Tutu of the New York State Department of insurance sent Defendant Violetto a letter concerning ACIC's March 31, 2000 consolidated Quarterly Statement, wherein Osei-Tuto stated that "our preliminary review of the above captioned statements indicated that the loss and loss ratio adjustment expense reserves to surplus as regards policyholders at March 31, 2002 is at 4.5:1...please indicate what steps management has taken or intends to take to bring this into line with industry average of approximately 2:1."

347. Subsequent to reporting its financial statements as of October 18, 2002, Kingsway became aware that ACHI did not utilize available information when it developed its ending loss and loss adjustment expense reserves for the period ending March 31, 2002. The result was that the net

loss reserves provided by pre-acquired ACHI were actuarially unsound by approximately $9.7 million.

348. At all times, the Defendants Solomon, Barrett, Dore, Elder, Thomas and Violetto were aware that the reserves problems were materially actuarially unsound prior to the Tender Offer but concealed the results to personally benefit from the artificially high stock price. When Kingsway became aware of the problems concerning the acquired Company's reserves, it investigated both the financials and the reserves. Defendants Solomon, Barrett, Dore, Elder, Thomas and Violetto caused the reserves to be grossly actuarially unsound because they were aware that Kingsway would be focused on the stock price. Defendant Dore, when questions began being asked, a participant in the conspiracy to defraud Kingsway during the Tender Offer, became combative and uncooperative.

349. As early as December 26, 2002, Dore sent an email, which stated: "ACHI I run...was sold to Kingsway....I am planning on exercising my change of control provision in my contract in the next few months." Dore, therefore, was planning to leave ACHI long before his resignation in April 2003, erroneously assuming that the change of control provision in his contract was "exercisable" by him.

350. On or about December 31, 2002, ACHI, at Gennett's recommendation, increased its reserves by approximately $10 million.

351. Kingsway further discovered that in the third quarter of 2001, prior to the acquisition, a $3 million payable owed by ACHI was entered on ACHI's books as a $3 million receivable. Defendants Solomon, Thomas, Barrett, Violetto, Dore and Elder failed to make the necessary adjustment upon discovering the error, resulting in an overstatement of the stockholders' equity by $6 million. The $6 million difference was a materially false statement. Notwithstanding

this error, PwC's opinion, dated March 27, 2002 and included in the 2001 10-K, stated that ACHI's financial statements fairly and accurately represented ACHI's financials.

352. In or about 2003, Kingsway's own independent accountant uncovered the fraud and discovered that the net loss adjustment expense reserves and net loss adjustment reserves were actuarially unsound by approximately $14.6 million, $21.0 million, $11.3 million, and $9.9 million for years ended December 31, 2001, 2000, 1999 and for the periods prior to 1998, respectively. A chart enumerating results of the Defendants' conduct on reserves is attached as Exhibit "A."

353. Kingsway subsequently learned that certain tax recoveries were also recorded in error by ACHI for the years ending March 31, 2002 and December 31, 2000 and 2001 by $122,000, $453,000 and $636,000, respectively, for the purpose of inflating stock value.

354. Kingsway further discovered that certain tax assets amounting to $895,000 that were established in the periods prior to 1999 lacked adequate documentation to support their existence. PwC, ACHI's former independent accountants, failed to discover the fraud despite knowledge that ACHI's Board switched to various actuaries within a short period of time in an attempt to continue to sustain lower reserve estimates. When confronted with the numerous material misstatements by Kingsway, PwC defended that its audits between 1999 and 2000 were adequate albeit conceded errors in the audit and actuarial process.

355. As a result of the false financial reporting by ACHI at the direction of Defendants Solomon, Thomas, Barrett, Elder, Violetto and Dore, Kingsway discovered that the acquired Company had been substantially overvalued. Kingsway and the members of its subsidiary requested information from Defendant Dore concerning ACHI's pre-acquisition financials during their investigation of ACHI's pre-acquisition reserve estimates.

356.   At all times after the Acquisition, Defendant Dore failed to cooperate with Kingsway, ACHI, or ACHI's independent accountants during Kingsway's investigation of ACHI's pre-acquisition financial condition. When Defendant Dore became aware that his role in the pre-acquisition fraud was about to be discovered, he resigned for fear of being terminated "for cause," claiming that his duties as CEO had been reduced when in fact they had not been.

357.   Dore's resignation letter of April 15, 2003 was the first time ACHI's unsuspecting board members learned of Dore's alleged dissatisfaction with his role at ACHI after the Kingsway acquisition.

358.   Prior to his resignation, Dore failed to cooperate with ACHI's post-acquisition board members, and failed to discharge his duties as President and CEO under his employment contract, by failing to report to work and seeking other employment, as well as concealing his role in the fraud, including destroying documents that would have uncovered the fraud among which documents was a memorandum by Defendant Violetto concerning the manipulation of the reserves.

## NO SAFE HARBOR

359.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Third Amended Complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent that there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that would cause actual results to differ materially from those in the purportedly forward-looking statements. To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, the Defendants Solomon, Barrett, Dore, Elder, Thomas and Violetto are liable for those false

forward-looking statements because at the time each of those forward-looking statements was made the particular speaker knew that the statement being made was false, and/or the statement was authorized and/or approved by the Defendant Board Members who knew that those statements were false when made.

## COUNT I

### Against Defendants PricewaterhouseCoopers, Solomon, Elder, Barrett, Thomas, Dore and Violetto for Securities Fraud under §10(b), 15 U.S.C §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5(b)

360. Plaintiffs Kingsway, American Service Insurance Company and Universal Casualty Company repeat and reallege the allegations contained in paragraphs 1 through 359 as if fully set forth herein.

361. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all times control persons, carried out a plan, scheme and course of conduct which was intended and did in fact (i) deceive Kingsway during the Tender Offer as alleged herein; (ii) artificially inflate ACHI's stock price through understatement of its reserves during the Tender Period; and (iii) cause Kingsway to purchase ACHI's securities at an artificially inflated price. ACIC's reserves directly impacted the financial condition of ACHI, its insurance rating and, as a result, its stock price.

362. The setting of fraudulent loss reserves for ACIC was done by the Defendants. Had the reserves been maintained at appropriate levels, or, at a minimum, reported in ACHI's public filings accurately, ACHI's true financial condition would have been apparent to the investing public and any potential purchaser. It would have been apparent to the investing public and any potential purchasers that ACHI's equity value was far less than the $2.10 that Kingsway paid per share.

363. At the time of the negotiations and the execution of the Tender Offer, Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons and PwC conspired to and did carry out a scheme to intentionally: (i) disseminate materially false financial information for the purpose of misleading investors concerning the publicly traded Company's fiscal condition by artificially inflating ACHI's value; (ii) set the loss reserves at artificially low levels to prevent further deterioration of it's A.M. Best rating and standing within the insurance industry; (iii) omit material information concerning ACHI's reserve inadequacies in its 10-K filings to make its balance sheet more attractive to Kingsway; and (iv) cause Plaintiff to acquire this financially troubled company at an inflated price.

364. PwC knew that the reserves were materially actuarially unsound from as early as January 2000 when ACHI sought to retain actuaries who would justify ACHI's lower reserve numbers. In failing to report this inadequacy and rather, repeatedly opining that the reserve levels were reasonable; PwC intentionally, or through recklessness, committed fraud by concealing the true financial condition of ACHI.

365. Although retained to provide independent outside auditing services by: (i) dually performing internal actuarial analyses and calculations as part of the process of setting reserves, and (ii) simultaneously auditing financial statements, PwC knowingly abandoned its role as an independent auditor. Its claim of serving as ACHI's independent auditor of financial statements was a materially false and misleading.

366. PwC further committed securities fraud when it falsely stated in the 2001 10-K that the financial statements "present fairly, in all material respects, the financial position" of ACHI. By virtue of its actuarial analysis in the setting of the fraudulent reserves, PwC knew, or was reckless in not knowing, that this statement was false. Also, by virtue of its obligation as ACHI's

NYC_206950_2

auditor, PwC knew, or was reckless in not knowing, that this statement was false. This false statement was material, as the reported reserves distorted ACHI's true financial condition. Kingsway reasonably relied upon this materially false statement in deciding to purchase ACHI.

367. PwC violated securities laws when it falsely stated that its audits were performed in compliance with GAAS and GAAP. GAAS required PwC to perform its audit in such a way as to obtain reasonable assurance about whether the financial statements were free of material misstatements. PwC knew, or was reckless in not knowing, that it had not observed GAAS due to its own involvement in certifying false reserves, which in turn caused the financial condition of ACHI to be materially misstated in violation of GAAP.

368. Kingsway reasonably relied on PwC's fraudulent opinions in arriving at its decision to purchase the shares of ACHI. Kingsway was injured by its reasonable reliance on false certifications and suffered damages as a result of PwC's fraud and/or recklessness.

369. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all times control persons, were intentionally understating reserves at an actuarially unsound level.

370. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, were aware that a failure to set loss reserves properly could and would result in ACHI having to input capital in the future to satisfy deficiencies.

371. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, were also aware that any report of a year-end increase of its reserves could and would negatively affect ACHI's financials and Best rating, thus negatively impacting ACHI's stock price and their personal net worth.

NYC_206950_2

372. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, knew that they were materially understating ACHI's reserves at an actuarially unsound deceptive level and that by day they would misstate in a material way the value of the company. They also know that by so doing they would defraud the investing public including Kingsway, and its subsidiaries.

373. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, knew that they were making materially false statements or omissions in the 1999, 2000 and 2001 10-K filings with regard to ACHI's financial condition thereby maintaining an artificially inflated stock price.

374. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, in understating ACHI's reserves and filing false financial statements, intentionally, or through recklessness, committed fraud by concealing the true financial condition of ACHI.

375. At all times that the materially false and misleading statements were made, Plaintiff was ignorant of their material falsity. Plaintiff believed the materially false statements to be true. Had Plaintiff known of the undisclosed and intentionally concealed financial condition of ACHI, Kingsway, and its subsidiaries Lincoln General, American Service, and Universal Casualty would not have purchased or otherwise acquired ACHI's securities, or, if they had acquired such securities, it would not have done so at the artificially inflated price.

376. Defendants' conduct demonstrated such wanton dishonesty in contributing to the artificially inflated price as to rise to the level of criminal indifference and fraud upon the investing public, beyond the Plaintiff itself. The materially false and misleading statements, discussed in detail above, involved a high degree of moral culpability with a disregard of the rights of others.

NYC_206950_2

Defendants' fraud was a continuous and systematic scheme directed at the general public who purchased securities and who relied on the misstatements and omissions inherent in the inflated stock price.

377. To its detriment, Kingsway reasonably relied on the Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, misstatements and omissions as they pertained to the overall financial condition of ACHI. Kingsway was injured by its reliance on false financial information and suffered damages as a result of the fraud.

## COUNT II

### Against PricewaterhouseCoopers, and the Defendant Board Members and the Control Persons for Common Law Fraud

378. Plaintiffs Kingsway, American Service Insurance Company, Lincoln Insurance and Universal Casualty Company repeat and reallege the allegations contained in paragraphs 1 through 377 as if fully set forth herein.

379. But for the material misrepresentations of fact and the omission of material facts put forth by Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, and PwC, as set forth above, Kingsway would not have tendered an offer to purchase ACHI under the existing terms and conditions made.

380. These actions of fraud by Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, and PwC were knowing, willful, wanton, and intentional.

381. Plaintiffs have been damaged as a result of its reasonable reliance on Defendant Board Members, Control Persons, and PwC's material misstatements and omissions.

382. Against PwC, Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, the foregoing actions of fraud demonstrate Defendants' willful and wanton dishonesty and disregard for the rights of others.

383. For the reasons set forth above, Defendants' actions constitute common law fraud.

## COUNT III

### Against the Defendant Board Members and the Control Persons for Control Persons Liability Under Section 20(a) of the Exchange Act

384. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 383 as if fully set forth herein.

385. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, were controlling persons of ACHI within the meaning of Section 20(a) of the Exchange Act of 1934, 15 U.S.C §78aa by virtue of their: (i) offices, (ii) high-level positions, (iii) directorship and participation in and awareness of ACHI's operations, and/or (iv) intimate knowledge of the false financial statements filed with the SEC and state insurance agencies and disseminated to the investing public, at the time of the wrongs alleged herein.

386. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto, who were officers or board members but at all time control persons, because of their positions of authority generated and/or controlled the contents of the various SEC filings and other public statements pertaining to ACHI during the Tender Offer. The Defendant Board Members and the Control Persons exercised their power and influence to engage in the illegal conduct and practices complained of herein by

causing ACHI to disseminate to the public the materially false and misleading statements referred to above.

387. Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto's, who were officers or board members but at all time control persons, positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff prior to and at the time of Kingsway's Tender Offer.

388. Kingsway relied, to its detriment, on Defendants Solomon, Elder, Barrett, Thomas, Dore and Violetto's, who were officers or board members but at all time control persons, materially false and misleading information and omissions as it pertained to the overall financial condition of ACHI. Kingsway was injured by its reliance on false financial information and suffered damages as a direct and proximate result of the Defendant Board Members and Control Persons' wrongful conduct.

## COUNT IV

### Against Defendant Dore For Declaratory Relief

389. Plaintiff ACHI repeats and realleges the allegations contained in paragraphs 1 through 388 as if fully set forth herein.

390. At all times during the Relevant Period, Defendant Dore breached his fiduciary duties of good faith and loyalty to ACHI and its' stockholders by participating in a conspiracy to fraudulently and grossly understate ACHI's reserves for the sole purpose of artificially inflating the stock price for the benefit of himself.

NYC_206950_2

391.   After Kingsway's Acquisition, Defendant Dore continued as the post acquisition company's Chairman, President and CEO until his resignation on April 15, 2003. Dore continued to breach his fiduciary duties of good faith and loyalty to ACHI after the acquisition by failing to cooperate with the post-acquisition board members of ACHI, failing to discharge his duties, and concealing his role in the fraud. Defendant Dore has now requested that he be provided with compensation under the change of ownership provision in his employment contract.

392.   This Court should declare Defendant Dore's contract void because Defendant Dore entered into the contract with the fraudulent intent to defraud the investing public and order forfeiture of all compensation awarded him for breach of the duty of a faithful employee.

## PRAYER FOR RELIEF

Plaintiffs demand a trial by jury for all claims so triable.

**WHEREFORE**, Plaintiffs demand judgment as follows:

(i) As for Count I, awarding Plaintiffs Kingsway, American Service Insurance Company and Universal Casualty Company compensatory damages in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00) as against Defendants, jointly and severally, for the damages sustained as a result of their wrongful conduct, together with prejudgment interest as well as costs and expenses incurred in this litigation including reasonable attorneys' fees and other costs to the extent allowed by law, and

(ii) As for Count II, awarding Plaintiffs Kingsway, American Service Insurance Company and Universal Casualty Company compensatory and punitive damages in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00) as against Defendants, jointly and severally for the damages sustained as a result of the wrongful conduct, together with prejudgment interest as well as costs and expenses incurred in this litigation including reasonable attorneys' fees and other costs and disbursements to the extent allowable by law.

(iii) As for Count III, awarding Plaintiffs Kingsway, American Service Insurance Company and Universal Casualty Company compensatory damages in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00) as against Defendants, jointly and severally, for the damages sustained as a result of their wrongful conduct, together with prejudgment interest as well as costs and expenses incurred in this litigation including reasonable attorneys' fees and other costs to the extent allowed by law, and

(iv) As for Count IV, declaring that the employment contract that Defendant Dore entered into with Plaintiff ACHI in August 2000 is void by virtue of his actions and awarding

Plaintiff ACHI compensatory damages under the Contract against Dore for the damages sustained by ACHI as a result of the wrongful conduct, together with prejudgment interest as well as costs and expenses incurred in this litigation including reasonable attorneys' fees and other costs and disbursements to the extent allowable by law.

(vii)   In addition as for Count IV declaring that the employment contract that Defendant Dore entered into with ACHI in August 2000 is void by virtue of his actions and awarding ACHI compensatory damages in the form of forfeiture of Dore's compensation awarded to him from after the date upon which is disloyalty to ACHI began, together with prejudgment interest as well as costs and expenses incurred in this litigation, including reasonable attorney's fees and other costs and disbursement to the extent allowable by law.

Dated: April 19, 2005
   New York, New York

               _____
               Harold J. Ruvoldt, Jr. (HR-6556)
               Cathy Fleming (CF-2682)
               EDWARDS & ANGELL, LLP
               750 Lexington Avenue, 12th Floor
               New York, New York 10022
               (212) 308-4411

               Attorneys for Kingsway Financial Services, Inc.,
               Lincoln General Insurance Company, American
               Service Insurance Company, Inc., Universal
               Casualty Company, and American Country
               Holdings, Inc.