# REARDON GOLINKIN & REED

ATTORNEYS AT LAW
208 S. LASALLE STREET • SUITE 1290
CHICAGO, ILLINOIS 60604-1102
TEL: 312.855.3700   FAX: 312.855.1089
E-MAIL: info@rgrlaw.com

DIRECT DIAL: 312.855.1040 (KAR)
312.855.0311 (SOR)
E-MAIL: KREARDON@RGRLAW.COM
SREED@RGRLAW.COM

**VIA CERTIFIED MAIL**

October 24, 2003

Mr. James R. Zuhlke
President & CEO
Kingsway America, Inc.
1515 E. Woodfield Road
Suite 820
Schaumburg, IL 60173

RE:   Request for Indemnification and Selection of New York Counsel
      Case: <u>Kingsway Financial Services, Inc. v. PriceWaterhouseCoopers, et al.</u>
      Case No.: 03-CV-5560, U.S. District Court, Southern District of New York
      Our File No.: DORE-KSL-0002

Dear Mr. Zuhlke:

This is further to our repeated requests on behalf of our client, John A. Dore, under Delaware law and pursuant to the Indemnification Agreement, dated April 2, 2002, between ACHI and Mr. Dore ("Agreement"), and specifically Paragraph Two thereof, to obtain indemnification for the referenced action ("New York Litigation"). As you may be aware, Kingsway Financial Services, Inc. ("Kingsway") has recently served Mr. Dore with process in the New York Litigation and therefore Mr. Dore is now required to retain New York counsel to appear on his behalf in those proceedings.

Mr. Dore has elected to retain Lewis J. Liman of the firm of Cleary Gottlieb as New York counsel. Mr. Liman has agreed to represent Mr. Dore on the same terms and conditions that he represents several other co-defendants in the New York Litigation who are affiliated with American Country Holdings, Inc. ("ACHI"), which we understand to be a blended hourly rate of $575.00. This firm will continue to act as lead counsel to Mr. Dore in all proceedings including the New York Litigation and may also file an appearance there on his behalf.

On Mr. Dore's behalf, we reiterate our request that he be indemnified and held harmless by ACHI from any and all claims made in reference to this litigation and that he be indemnified for all defense costs associated with the New York Litigation, including the fees and costs of Mr. Liman and his firm and the fees and costs of this firm. This notice is given pursuant to paragraph 4(a) of the Agreement.

You should be aware that defendants' counsel has stated in pleadings filed in the Circuit Court of

# FOLEY & LARDNER
ATTORNEYS AT LAW

321 NORTH CLARK STREET, SUITE 2800
CHICAGO, ILLINOIS 60610
TELEPHONE: 312.832.4500
FACSIMILE: 312.832.4700
WWW.FOLEYLARDNER.COM

## FACSIMILE TRANSMISSION

Total # of Pages 33 (including this page)

| TO: | PHONE: | FAX #: |
|---|---|---|
| CHRISTOPHER EDWARDS | 212.756.0327 | 888.325.9577 |

From: Bennett L. Epstein
Sender's Direct Dial: 312.832.5193
Date: 12/10/2003
Client/Matter No: 034207.0101
User ID: 2169

**MESSAGE:**

If there are any problems with this transmission or if you have not received all of the pages, please call Heidi Van Howe @ 312.832.4781

CONFIDENTIALITY NOTICE: THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR ANY AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

011.533162.1

ExPro

# GREATAMERICAN
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

## DECLARATIONS
for
Directors', Officers', Insured Entity and
Employment Practices Liability Insurance

Insurance is afforded by the company indicated below: (Each a capital stock corporation)

☒ Great American Insurance Company  ☐ American National Fire Insurance Company
☐ Other

Note: The Insurance Company selected above shall herein be referred to as the Insurer.

Policy Number: DOL5741496          Policy Form Number: D2100

Note: This is a claims made policy, please read it carefully. Amounts incurred as Costs of Defense shall reduce the Limit of Liability available to pay judgments or settlements and shall also be applied against the retention. This Policy does not provide for any duty by the Insurer to defend those insured under the Policy.

Item 1. Corporation:       AMERICAN COUNTRY HOLDINGS, INC.

   Mailing Address:        222 NORTH LASALLE STREET
                           CHICAGO, IL 60601

   Attention:              JOHN A. DORE, CHAIRMAN, PRESIDENT & CEO

Item 2. Policy Period:  From: 07/24/2001       To:  07/24/2002
                              (Month, Day, Year)      (Month, Day, Year)
       (Both dates at 12:01 a.m. Standard Time at the address of the Corporation as stated in Item 1)

Item 3. Limit of Liability (Inclusive of Costs of Defense):

   $ 10,000,000     Aggregate Limit of Liability for the Policy Period

Item 4. Retentions:
   Insuring Agreement A:

       Each Claim:                                                          $ 0

   Insuring Agreements B and/or C:

       Each Claim other than a Securities Claim or Employment Practices Claim:  $ 50,000
       Each Employment Practices Claim:                                         $ 50,000
       Each Securities Claim:                                                   $ 150,000

Item 5. Premium: (Prepaid)                                                      $ 83,265

Item 6. Endorsements Attached
   D2304   D2506   D2536   D2843

Item 7. Prior and Pending Date 07/25/1997

Item 8. Notices:  Notice of Claim shall be addressed to:        All other notice shall be addressed to:
                  Great American Insurance Companies,            Great American Insurance Companies,
                  Executive Liability Division, Claims Department,  Executive Liability Division,
                  P.O. Box 66943, Chicago, Illinois 60666         P.O. Box 66943, Chicago, Illinois 60666

These Declarations, along with the completed and signed Proposal Form and the *Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy*, shall constitute the contract between the Insured and the Insurer.

_____        _____
      (Authorized Representative)              (Countersignature Date)

D 2101 (1/99)          THIS IS A CLAIMS MADE POLICY, READ IT CAREFULLY          AC-02253

# ExecPro®

### Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy

Great American Insurance Company - Executive Liability Division:
1515 Woodfield Road, Suite 500, Schaumburg, IL 60173

## Table of Contents

| | | |
|---|---|---|
| I. | Insuring Agreements | Page 1 |
| II. | Discovery Period | Page 1 |
| III. | Definitions | Page 2 |
| IV. | Exclusions | Page 4 |
| V. | Limit of Liability | Page 5 |
| VI. | Retention | Page 6 |
| VII. | Costs of Defense and Settlements | Page 6 |
| VIII. | Notice of Claim | Page 7 |
| IX. | General Conditions | Page 8 |
| | (A) Cancellation or Non-Renewal | Page 8 |
| | (B) Proposal Form | Page 8 |
| | (C) Action Against the Insurer | Page 8 |
| | (D) Merger or Acquisition | Page 8 |
| | (E) Conversion to Run-Off Coverage | Page 9 |
| | (F) Outside Entity Provision | Page 9 |
| | (G) Coverage Extensions | Page 9 |
| | (H) Subrogation | Page 9 |
| | (I) Arbitration | Page 9 |
| | (J) Assignment | Page 10 |
| | (K) Conformity to Statute | Page 10 |
| | (L) Entire Agreement | Page 10 |
| | (M) Corporation Represents Insured | Page 10 |
| | (N) Representative of the Insurer | Page 10 |

AC-02254

**GREAT AMERICAN INSURANCE COMPANIES®**
Headquarters: 580 Walnut Street, Cincinnati, Ohio 45202

## THIS IS A CLAIMS MADE POLICY. READ IT CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (a stock insurance company, hereinafter called the Insurer), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the Insured and Insurer agree:

### Section I. Insuring Agreements

A. The Insurer shall pay on behalf of the Insured Persons all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, except for any Loss which the Company actually pays as indemnification.

B. The Insurer shall pay on behalf of the Company all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, but only to the extent the Company is required or permitted by law to indemnify the Insured Persons.

C. The Insurer shall pay on behalf of the Insured Entity all Loss which the Insured Entity shall be legally obligated to pay as a result of a Securities Claim first made against the Insured Entity during the Policy Period or the Discovery Period for a Wrongful Act.

### Section II. Discovery Period

A. In the event the Insurer refuses to renew this Policy or the Corporation chooses to cancel or not renew this Policy, the Corporation shall have the right, upon payment of fifty percent (50%) of the annual premium, (or if the Policy Period is other than annual, fifty percent (50%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any Claim first made against any Insured during the period of twelve (12) months after the end of the Policy Period, but only with respect to any Wrongful Act committed or alleged to have been committed before the end of the Policy Period. This twelve (12) month period shall be referred to in this Policy as the Discovery Period.

B. As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid, and a written request together with payment of the appropriate premium for the Discovery Period must be provided to the Insurer no later than thirty (30) days after the end of the Policy Period.

C. The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the Policy Period.

D2100 (1/99)    1    AC-02255

Section III. Definitions

A. "Claim" shall mean:

(1) a written demand for monetary or non-monetary relief made against any Insured and reported to the Insurer pursuant to Section VIII.A.(1); or

(2) a civil, criminal, administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any Insured before the Equal Employment Opportunity Commission or any similar governmental body.

B. "Company" shall mean the Corporation and any Subsidiary.

C. "Corporation" shall mean the entity named in Item 1 of the Declarations.

D. "Costs of Defense" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any Claim including the costs of an appeal bond, attachment bond or similar bond (but without obligation on the part of the Insurer to apply for or furnish such bonds); provided, however, Costs of Defense shall not include salaries, wages, overhead or benefit expenses associated with any Insured Persons.

E. "Directors" and "Officers" shall mean all persons who were, now are, or shall be directors and/or officers of the Company.

F. "Employment Practices Claim" shall mean any Claim brought by or on behalf of any past, present or future employee of the Company or Outside Entity, or any applicant for employment with the Company or Outside Entity alleging an Employment Practices Wrongful Act.

G. "Employment Practices Wrongful Act" shall mean a Wrongful Act related to employment including but not limited to:

(1) wrongful dismissal, discharge or termination of employment, whether actual or constructive;
(2) employment related misrepresentation;
(3) sexual or workplace harassment of any kind;
(4) discrimination;
(5) wrongful failure to employ or promote;
(6) wrongful discipline;
(7) wrongful deprivation of career opportunity, including defamatory statements made in connection with an employee reference;
(8) failure to grant tenure;
(9) negligent evaluation;
(10) failure to provide adequate workplace or employment policies and procedures;
(11) wrongful retaliation; or
(12) employment related libel, slander, defamation; or invasion of privacy.

H. "Financial Insolvency" shall mean the Company becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Company.

I. "Insured(s)" shall mean the Insured Entity and all Insured Persons.

J. "Insured Entity" shall mean the Company, but only with respect to coverage provided under Insuring Agreement I.C.

K. "Insured Persons" shall mean Directors and Officers and all past, present and future employees of the Company other than Directors and Officers.

L. "Loss" shall mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and Costs of Defense, provided, however, Loss shall not include criminal or civil fines or penalties imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award. Loss shall also not include any portion of damages, judgments or settlements arising out of any Claim alleging that the Company paid an inadequate price or consideration for the purchase of the Company's securities.

M. "Outside Entity" shall mean any not for profit entity classified under Section 501(c)(3) of the Internal Revenue Code of 1986 and any amendments thereto.

N. "Policy Period" shall mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in Item 2 of the Declarations, or its earlier termination if applicable.

O. "Related Wrongful Acts" shall mean Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

P. "Securities Claim" shall mean any Claim (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an Insured alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the Company, or

(2) brought by a security holder of the Company, arising solely with respect to such security holder's interest in such securities of the Company, whether directly, by class action, or derivatively on behalf of the Company.

Q. "Subsidiary" shall mean any entity in which the Corporation owns, directly or indirectly, more than fifty percent (50%) of the voting stock:

(1) on or before the inception date of this Policy;

(2) subsequent to the inception date of this Policy by reason of being created or acquired by the Company after such date, if the entity's total assets do not exceed twenty-five percent (25%) of the total consolidated assets of the Corporation as of the inception date of this Policy; or

(3) subsequent to the inception date of this Policy by reason of being created or acquired by the Company other than as described in (2) above, if the Corporation, within ninety (90) days, provides the Insurer with written notice thereof and agrees to any premium adjustment and/or coverage revision that may be required by the Insurer.

R. "Wrongful Act" shall mean:

(1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or Employment Practices Wrongful Act, by any Insured Persons in their capacity with the Company;

(2) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the Insured Entity, but only with respect to Insuring Agreement I.C.;

D2100 (1/99)                                   3                                      AC-02257

(3) any matter claimed against any Insured Persons solely by reason of their status with the Company; or

(4) any matter claimed against any Insured Persons arising out of their service as a director, officer, trustee or governor of an Outside Entity, but only if such service is at the request of the Company.

## Section IV. Exclusions

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:

A.  brought about or contributed to by:

   (1) any Insureds gaining any profit, advantage or remuneration to which they were not legally entitled; or

   (2) the deliberately fraudulent or criminal acts of any Insureds;

   provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred; and this exclusion shall not apply to coverage provided under Insuring Agreement I.B.;

B.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Act or Related Wrongful Act or any fact, circumstance or situation which has been the subject of any notice or Claim given under any other policy of which this Policy is a renewal or replacement;

C.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the Company and/or any Insured Persons as of the date stated in Item 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

D.  for any actual or alleged:

   (1) bodily injury, sickness, disease, or death of any person;

   (2) damage to or destruction of any tangible property, including the loss of use thereof; or

   (3) mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander;

   provided, however, part (3) of this exclusion shall not apply to any Employment Practices Claim;

E.  for any Wrongful Act of any Insureds in connection with any pension or welfare plans of the Company;

F.  for any Wrongful Act of any Insured Persons serving as a director, officer, trustee or governor of any entity other than the Company or an Outside Entity, even if directed or requested to serve as a director, officer, trustee or governor of such entity;

G.  for any Wrongful Act of any Insured Persons serving as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or by any director, officer, trustee or governor thereof; provided, however, this exclusion shall not apply to any Employment Practices Claim;

D2100 (1/92)         4         AC-02258

H. by or on behalf of the Company, or any security holder of the Company, or any Directors or Officers, provided, however, this exclusion shall not apply to:

(1) any Employment Practices Claim;

(2) any Claim brought by any Directors or Officers where such Claim is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(3) any Claim brought by any security holder of the Company whether directly or derivatively, if the security holder bringing such Claim is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any Director or Officer or the Company;

I. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind; provided, however, that this exclusion shall not apply to any derivative suit by a security holder of the Company if the security holder bringing such Claim is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any Director or Officer or the Company;

J. for any Wrongful Act of any Subsidiary or the Insured Persons of such Subsidiary or any entity that merges with the Company or the Insured Persons of such entity that merges with the Company occurring:

(1) prior to the date such entity became a Subsidiary or was merged with the Company;

(2) subsequent to the date such entity became a Subsidiary or was merged with the Company which, together with a Wrongful Act occurring prior to the date such entity became a Subsidiary or was merged with the Company, would constitute Related Wrongful Acts; or

(3) subsequent to the date the Corporation ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such Subsidiary;

K. which is insured in whole or in part by another valid policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise.

NOTE: For the purpose of determining the applicability of the aforementioned Exclusion A., it is understood and agreed that:

(1) the Wrongful Act of any Insured Person shall not be imputed to any other Insured Person; and

(2) only the Wrongful Acts of any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the Company shall be imputed to the Insured Entity.

### Section V. Limit of Liability

A. The Insurer shall be liable to pay one hundred percent (100%) of Loss in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

B. Costs of Defense shall be part of, and not in addition to, the Limit of Liability stated in Item 3 of the Declarations, and such Costs of Defense shall serve to reduce the Limit of Liability.

C. The Insurer's liability for all Loss shall be the amount shown in Item 3 of the Declarations which shall be the maximum aggregate Limit of Liability of the Insurer for the Policy Period, regardless of the time of payment or the number of Claims.

D2100 (1/99) 5 AC-02259

## Section VI. Retention

A. One Retention shall apply to each and every Claim. The Company shall be responsible for, and shall hold the Insurer harmless from, any amount within the Retention. For the purposes of the application of the Retention, Loss applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. In the event the Company is unable to indemnify the Insured Persons solely by reason of its Financial Insolvency, the Insurer shall, pursuant to the terms and conditions of Section VII.E, advance Costs of Defense incurred by the Insured Persons without first requiring payment of the Retention applicable to Claims covered by Insuring Agreement I.B. The certificate of incorporation, charter or other organizational documents of the Company, including by-laws and resolutions, shall be deemed to require indemnification and advancement of Loss to the Insured Persons to the fullest extent permitted by law.

B. More than one Claim involving the same Wrongful Act or Related Wrongful Acts of one or more Insureds shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. All such Claims constituting a single Claim shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such Claim was first made; or (2) the earliest date on which any such Wrongful Act or Related Wrongful Act was reported under this Policy or any other policy providing similar coverage.

C. With respect solely to any Securities Claim, the Retention shall apply only to Costs of Defense. The Retention shall be waived for any Securities Claim and the Insurer shall reimburse such Costs of Defense paid by the Insured if:

   (1) an adjudication with or without prejudice is obtained pursuant to a trial, motion to dismiss or motion for summary judgment in such Claim, or

   (2) a complete and final settlement of such Claim with prejudice,

establishes that no Insured is liable for any Loss other than Costs of Defense; provided, however, subject to a written undertaking by the Company in a form acceptable to the Insurer, any Costs of Defense advanced by virtue of a waiver of the Retention shall be paid back by the Company to the Insurer in the event the Securities Claim is re-brought or any Claim is brought which is subject to the same Retention pursuant to Section VI.B.

## Section VII. Costs of Defense and Settlements

A. The Insureds shall not incur Costs of Defense, or admit liability, offer to settle, or agree to any settlement in connection with any Claim without the express prior written consent of the Insurer, which consent shall not be unreasonably withheld. The Insureds shall provide the Insurer with all information and particulars it may reasonably request in order to reach a decision as to such consent. Any Loss resulting from any admission of liability, agreement to settle, or Costs of Defense incurred prior to the Insurer's consent shall not be covered hereunder.

B. The Insureds, and not the Insurer, have the duty to defend all Claims, provided that the Insureds shall only retain counsel as is mutually agreed upon with the Insurer.

C. The Insurer shall at all times have the right, but not the duty, to associate with the Insureds in the investigation, defense or settlement of any Claim to which coverage under this Policy may apply.

D. If a Claim made against any Insured includes both covered and uncovered matters, or is made against any Insured and others, the Insured and the Insurer recognize that there must be an allocation between insured and uninsured Loss. The Insureds and the Insurer shall use their best efforts to agree upon a fair and proper allocation between insured and uninsured Loss.

D2100 (1/99)

6

AC-02260

E. The Insurer shall advance Costs of Defense prior to the final disposition of any Claim, provided such Claim is covered by this Policy. Any advancement shall be on the condition that:

(1) the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the Financial Insolvency of the Company;

(2) any amounts advanced by the Insurer shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

(3) the Company and Insured Persons and the Insurer have agreed upon the portion of the Costs of Defense attributable to covered Claims against the Insureds; and

(4) in the event it is finally established that the Insurer has no liability under the Policy for such Claim, the Company and Insured Persons will repay the Insurer upon demand all Costs of Defense advanced by virtue of this provision.

### Section VIII. Notice of Claim

A. The Insureds shall, as a condition precedent to their rights under this Policy, give the Insurer notice in writing of any Claim:

(1) as defined in Section III.A.(1) which is made during the Policy Period. Such notice shall be given prior to the end of the Policy Period;

(2) as defined in Section III.A.(2) which is made during the Policy Period. Such notice shall be given as soon as practicable, but in no event later than ninety (90) days after the end of the Policy Period.

The Insureds failure to report a Claim pursuant to (1) above shall not negate the right to report a Claim pursuant to (2) above under this Policy or any renewal thereof.

B. If, during the Policy Period or Discovery Period, any Insured first becomes aware of a specific Wrongful Act and gives notice to the Insured of:

(1) the specific Wrongful Act;

(2) the injury or damage which has or may result therefrom; and

(3) the circumstances by which the Insured first became aware thereof;

then any Claim arising out of such Wrongful Act which is subsequently made against the Insured shall be deemed to have been made at the time the Insurer received such written notice from the Insured.

C. In addition to furnishing the notice as provided in Sections VIII.A. or B. the Insureds shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and other papers in connection therewith.

D. Notice to the Insurer as provided in Sections VIII.A. or B. shall be given to:

GREAT AMERICAN INSURANCE COMPANIES
EXECUTIVE LIABILITY DIVISION
CLAIMS DEPARTMENT
P.O. BOX 66943 CHICAGO, IL 60666.

## Section IX. General Conditions

A. **Cancellation or Non-Renewal**

(1) This Policy may be canceled by the Corporation at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX. E. wherein the entire premium for this Policy shall be deemed earned.

(2) This Policy may only be canceled by the Insurer if the Corporation does not pay the premium when due.

(3) If the Insurer elects not to renew this Policy, the Insurer shall provide the Corporation with no less than sixty (60) days advance notice thereof.

B. **Proposal Form**

It is agreed by the Company and the Insured Persons that the particulars and statements contained in the Proposal Forms and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the Company and the Directors and Officers that the statements in the Proposal Forms or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that except for material facts or circumstances known to the person(s) who subscribed the Proposal Forms, any misstatement or omission in such Proposal Forms or information provided therewith in respect of a specific Wrongful Act by a particular Director or Officer or his cognizance of any matter which he has reason to suppose might afford grounds for a future Claim against him shall not be imputed to any other Director or Officer for purposes of determining the validity of this Policy as to such other Director or Officer.

C. **Action Against the Insurer**

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the Insured's obligation to pay shall have been finally determined by an adjudication against the Insured or by written agreement of the Insured, claimant and the Insurer.

(2) No person or organization shall have any right under this Policy to join the Insurer as a party to any Claim against the Insureds nor shall the Insurer be impleaded by any Insured or their legal representative in any such Claim.

D. **Merger or Acquisition**

If, during the Policy Period, the Company acquires the assets of another entity, by merger or otherwise, and the acquired assets of such other entity exceed twenty-five percent (25%) of the assets of the Company as of the inception date of the Policy, written notice thereof shall be given to the Insurer as soon as practicable, but in no event later than ninety (90) days from the effective date of the transaction, together with such information as the Insurer may request. Premium adjustment and coverage revisions shall be effected as may be required by the Insurer.

D2100 (1/99)                                    8                                    AC-02262

E. **Conversion to Run-Off Coverage**

If, during the Policy Period, a transaction occurs wherein another entity gains control of the Corporation through the ownership of more than fifty percent (50%) of the voting stock of the Corporation, or the Corporation merges into another entity or consolidates with another entity such that the Corporation is not the surviving entity, then:

(1) the Corporation must give written notice of such transaction to the Insurer within ninety (90) days after the effective date of such transaction and provide the Insurer with such information in connection therewith as the Insurer may deem necessary;

(2) this Policy shall only apply to Wrongful Acts actually or allegedly committed on or before the effective date of such transaction; and

(3) the entire premium for this Policy shall be deemed earned as of the date of such transaction.

F. **Outside Entity Provision**

In the event a Claim is made against any Insured Persons arising out of their service as a director, officer, trustee or governor of an Outside Entity, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the Outside Entity and any insurance provided to the Outside Entity which covers its directors, officers, trustees or governors.

G. **Coverage Extensions**

(1) Spousal Provision
The coverage provided by this Policy shall also apply to the lawful spouse of an Insured Person, but only for Claims arising out of any actual or alleged Wrongful Acts of an Insured Person.

(2) Worldwide Provision
The coverage provided under this Policy shall apply worldwide. The term Directors and Officers is deemed to include individuals who serve in equivalent positions in foreign Subsidiaries.

(3) Estates and Legal Representatives
The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives or assigns of any Insured Persons in the event of their death, incapacity or bankruptcy, but only for Claims arising out of any actual or alleged Wrongful Acts of any Insured Persons.

H. **Subrogation**

In the event of any payment under this Policy, the Insurer shall be subrogated to all of the Insureds' rights of recovery and the Company and Insured Persons shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any Insured Persons or the Company.

I. **Arbitration**

It is agreed that any disputes or disagreements which arise in connection with this Policy and cannot be resolved through negotiation shall be resolved through final and binding arbitration. The dispute shall be submitted to the American Arbitration Association for resolution pursuant to its then prevailing commercial arbitration procedures. The panel shall consist of one arbitrator selected by the Corporation, one arbitrator selected by the Insurer and a third independent arbitrator selected by the first two arbitrators. Each party will bear its own legal fees and expenses. The costs and expenses of the arbitration procedure shall be split equally by the parties.

J. **Assignment**

Assignment of interest under this Policy shall not bind the Insurer until its consent is endorsed hereon.

K. **Conformity to Statute**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

L. **Entire Agreement**

By acceptance of this Policy, the Insureds and the Insurer agree that this Policy (including the Declarations, Proposal Forms submitted to the Insurer and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

M. **Corporation Represents Insured**

By acceptance of this Policy, the Corporation shall be designated to act on behalf of the Insureds for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

N. **Representative of the Insurer**

Great American Insurance Companies, Executive Liability Division, P.O. Box 66943, Chicago, Illinois 60666 shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of Claims shall be given pursuant to Section VIII. of the Policy.

In witness whereof the Insurer has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the Insurer.

GREAT AMERICAN INSURANCE COMPANIES®

*[signature]*
Secretary

*[signature]* Carl H. Lindner III
President

AC-02264

D2100 (1/89)

10

# GREATAMERICAN.
### INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ILLINOIS AMENDATORY ENDORSEMENT

In compliance with the insurance regulations of the state of Illinois, the following provisions are hereby added to the Policy. In the event that a similar provision is already contained in the Policy, the provisions of this endorsement shall take precedence over such similar provision.

1. ACTION AGAINST INSURER. No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insured with all of the terms of this Policy.

   Any person or organization or the legal representative thereof shall be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. Bankruptcy or insolvency of an Insured or of an Insured Person's estate shall not relieve the Insurer of any of its obligations hereunder.

2. CHANGES. The terms of this Policy shall not be changed except by endorsement issued to form a part of this Policy signed by an authorized representative of the Insurer.

   Knowledge of an agent of the Insurer shall be knowledge of the Insurer and any fact which breaches a condition of the Policy and is known to an agent shall not void the Policy or defeat a recovery thereon in the event of Loss.

3. CANCELLATION OF POLICY. This Policy may be cancelled by the Corporation by surrender of the Policy to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

4. CANCELLATION FOR NON-PAYMENT OF PREMIUM. Insurance under this Policy may be cancelled by the Insurer if the Corporation fails to discharge when due any of its obligations in connection with the payment of premium for such Policy or any installment thereof by mailing to the Corporation written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

---

Insured: AMERICAN COUNTRY HOLDINGS, INC.

Policy Period: 07/24/01 to Policy expiration

Policy Number: DOL5741496          AC-02265

Countersigned by: _____
                   Authorized Representative

Endorsement Effective Date: 07/24/01

D 2304    (05/00)                    Endorsement: 1          Page 1 of 3

**GREAT AMERICAN.**
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ILLINOIS AMENDATORY ENDORSEMENT

Section II. Discovery Period shall also apply in the event the Insurer cancels this Policy due to non-payment of the premium when due, provided that the Corporation pays the Insurer any monies due.

5. RENEWAL OF POLICY. This Policy may be renewed for one or more subsequent terms by:

   (a) mailing to the Corporation, at the last known address as shown in this Policy, a renewal premium notice for the applicable renewal term, or

   (b) issuing or offering to issue a renewal Policy, certificate or other evidence of renewal at the applicable renewal premium in accordance with the Insurer's then current rules, rates, rating plans, premiums and minimum premiums applicable to this insurance.

   Any obligation for dividend or other credit shall not in any way extend or change the policy term.

6. NON-RENEWAL OF POLICY. The Corporation shall have the right to renewal of this Policy, on the terms then being applied by the Insurer to similar risks, for an additional period of time equivalent to the expiring policy term if the agreed term is a year or less, or for one year if the agreed term is longer than one year, unless at least sixty (60) days prior to the date of expiration of the policy term, a notice of intention not to renew the Policy beyond such agreed expiration date is mailed to the Corporation.

   If the Corporation has insured elsewhere, has accepted replacement coverage or has requested or agreed to non-renewal, the provisions of this Non-Renewal of Policy condition do not apply.

   No misrepresentation or breach of affirmative warranty made by the Insureds or in their behalf in the negotiation of this Policy affects the Insurer's obligation under this Policy unless the Insurer relies on it and it is either material or made with intent to deceive, or unless the facts misrepresented or falsely warranted contribute to the Loss. No failure of a condition prior to the Loss and no breach of a promissory warranty shall affect the Insurer's obligation under this Policy unless it exists at the time of Loss and either increases the risk at the time of Loss or contributes to the Loss. The provisions of the condition do not apply to failure to tender payment of premium.

7. OTHER INSURANCE. It is understood and agreed that Section IV.K. of the Policy is hereby deleted in its entirety. The following paragraph is added to the Policy:

AC-02266

D 2304  (06/00)                                            Endorsement                    Page 2 of 3

**GREATAMERICAN.**
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ILLINOIS AMENDATORY ENDORSEMENT

The Insured may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. In such event, the Insurer will pay its share of the covered Loss and Costs of Defense, such share to be equal to the proportion that the then available Limit of Liability under this Policy bears to the aggregate of all limits of liability of all insurance covering such Loss and Costs of Defense on the same basis. If the Insured has insurance covering any Loss or Costs of Defense other than insurance as described above, the Insurer will pay only the amount of covered loss or damages in excess of the amounts due under such other insurance whether or not the Insured has recovered such amounts. Nothing in this paragraph is intended, however, nor shall it be construed to obligate the Insurer to make any payment it would not otherwise be obligated to make under the terms, conditions, limitations and endorsements of this Policy, or to pay any Loss or Costs of Defense in excess of the then available Limit of Liability under this Policy. This Policy shall not be subject to the terms of any other insurance.

8. It is understood and agreed that Section III.L. of the Policy is hereby deleted and replaced with the following:

   Section III.L. "Loss" shall mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award (in Illinois only vicariously assessed punitive damages are insurable), settlements and Costs of Defense, provided, however, Loss shall not include criminal or civil fines or penalties imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award. Loss shall also not include any portion of damages, judgments or settlements arising out of any Claim alleging that the Company paid an inadequate price or consideration for the purchase of the Company's securities.

9. It is understood and agreed that Section IX.I. of the Policy is hereby deleted in its entirety.

AC-02267

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

D 2304  (06/00)                                            Endorsement:                  Page 3 of 3

**GREATAMERICAN.**
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## PROFESSIONAL SERVICES EXCLUSION

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the performance of professional services for others for a fee, and caused by any act, error or omission.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured: AMERICAN COUNTRY HOLDINGS, INC.

Policy Period: 07/24/01 to Policy expiration

Policy Number: DOL5741496      AC-02268

Countersigned by: _____
                    Authorized Representative

Endorsement Effective Date: 07/24/01

D 2506  (01/99)                                    Endorsement: 2           Page 1 of 1