UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
GREAT AMERICAN INSURANCE COMPANY,          CASE NO.
                                           07 CIV. 6498 (RMB)
                Plaintiff,

        -against-

MARTIN L. SOLOMON, EDWIN W. ELDER,
WILLIAM J. BARRETT, WILMER J. THOMAS,
JR., JOHN A. DORE, KARLA VIOLETTO,
KINGSWAY FINANCIAL SERVICES, INC.
and AMERICAN COUNTRY HOLDINGS INC.,

                Defendants.
--------------------------------------X


**DEFENDANTS KINGSWAY FINANCIAL SERVICES, INC. AND
AMERICAN COUNTRY HOLDINGS INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THEIR COUNTERCLAIM**


Of Counsel:

        Sue C. Jacobs
        Lester Chanin


GOODMAN & JACOBS LLP
75 BROAD STREET - 30TH FLOOR
NEW YORK, NEW YORK 10004
————
(212) 385-1191

# Table of Contents

Table of Authorities .............................................. i

Preliminary Statement .............................................. 1

Statement of Facts ............................................... 4

Argument ....................................................... 4

### Point I

The Motion To Dismiss The Counterclaim
Should Be Denied, Because The Counterclaim
Sufficiently Pleads The American
Country Defendants Have Standing To Assert
A Claim For Bad Faith Refusal To Settle ...................... 4

    A. Motion To Dismiss Standard
       Under Rule 12(b)(6) ................................. 4

    B. New York Courts Have Long Recognized
       the Claim of Bad Faith Refusal
       to Settle By an Insurer ............................. 5

    C. The Counterclaim Sufficiently Alleges
       a Claim for Bad Faith Against
       Great American ...................................... 6

    D. Great American's Rule 12(b)(6) Motion
       Improperly Relies on Evidence Outside
       the Pleadings ...................................... 15

    E. Great American Raises Factual Issues,
       Rather than Identifying Pleading
       Deficiencies in the Counterclaim ................... 17

### Point II

The American Country Defendants Have
Standing To Assert A Claim For Bad
Faith Refusal To Settle Against Great
American, Because American Country
Purchased The Policy, Is An Insured Under
The Policy, And Kingsway And American
Country Are Real Parties In Interest ...................... 18

A. American Country Has Standing,
   Because It Purchased the Great
   American Policy and is in Privity
   with Great American ................................. 18

B. American Country Has Standing
   to Assert A Bad Faith Claim Against
   Great American, as the Promisee of the
   Great American Policy, Which is a
   Third-Party Beneficiary Contract .................... 21

C. The American Country Defendants Have
   Standing To Assert a Bad Faith Claim
   Against Great American, Because They
   Are the Real Parties in Interest ................... 23


CONCLUSION ...................................................... 25

## Table of Authorities

**Cases**

511 West 232nd Owners Corp. v. Jennifer Realty Co.,
98 N.Y.2d 144, 746 N.Y.S.2d 131 (2002) .......................... 19

Ansonia Associates Ltd. P'ship v.
Public Svc. Mut. Ins. Co., 257 A.D.2d 84,
692 N.Y.S.2d 5 (1st Dep't 1999) ................................ 8

Ansonia Assocs. Ltd. P'ship v. Public Svc.
Mut. Ins. Co., 180 Misc.2d 638, 693 N.Y.S.2d
386 (Sup. Ct. N.Y. Cnty. 1998), aff'd, 257 A.D.2d 84,
692 N.Y.S.2d 5 (1st Dep't 1999) ............................. 5,6

Bean v. Allstate Ins. Co.,
403 A.2d 793, (Md. 1979) ...................................... 20

Chosun Int'l v. Chrisha Creations, Inc.,
413 F.3d 324, 327 (2d Cir. 2005) ............................... 5

Conley v. Gibson,
355 U.S. 41, 45-46 (1957) ...................................... 5

Gant v. Wallingford Bd. of Educ.,
69 F.3d 669 (2d Cir. 1995) ..................................... 4

Global Network Communications, Inc. v. City of N.Y.,
458 F.3d 150 (2d Cir. 2006) .................................... 5

Goldman v. Belden,
754 F.2d 1059 (2d Cir. 1985) ................................... 6

Grandon v. Merrill Lynch & Co.,
147 F.3d 184 (2d Cir. 1998) .................................... 4

Greenidge v. Allstate Ins. Co.,
446 F.3d 356 (2d Cir. 2006) .................................... 6

Henneberry v. Sumitomo Corp. of Am.,
415 F. Supp.2d 423 (S.D.N.Y. 2006) ............................. 5

In re Enron Corp. Sec. Derivative & "ERISA" Litig.,
391 F. Supp.2d 541 (S.D. Tex. 2005) .............................................................. 22

Maertin v. Armstrong World Indus., Inc.,
241 F. Supp.2d 434 (D.N.J. 2002)..............................20

McCarter v. State Farm Mut. Auto Ins. Co.,
473 N.E.2d 1015 (Ill. App. Ct. 1985).........................21

New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,
 295 F.3d 232 (2d Cir. 2002)..................................5,7

Pavia v. State Farm Mut. Auto. Ins. Co.,
82 N.Y.2d 445, 605 N.Y.S.2d 208 (1993).........................7

Phillips v. Girdich,
408 F.3d 124 (2d Dep't 2005)...................................4

Pinto v. Allstate Ins. Co.,
221 F.3d 394 (2d Cir. 2000)....................................7

PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.,
838 A.2d 135 (Conn. 2004)....................................23

Roth v. Jennings,
489 F.3d 499 (2d Cir. 2007) ...............................15,16

Scroggins v. Allstate Ins. Co.,
393 N.E.2d 718, 720-21 (Ill. App. Ct. 1979)..................21

Smith v. General Accident Ins. Co., 91 N.Y.2d 648,
674 N.Y.S.2d 267 (1998) ....................................6,19

Soto v. State Farm Ins. Co.,
83 N.Y.2d 718, 613 N.Y.S.2d 352 (1994).........................6

St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.,
160 F.R.D. 464 (S.D.N.Y. 1995)...............................23

Wedtech v. Federal Ins. Co.,
740 F. Supp. 214 (S.D.N.Y. 1990)...................21,22,23,24

Yonkers Contracting Co., Inc. v. General Star
National Insurance Co.,
14 F.Supp.2d 365 (S.D.N.Y. 1998).............................7

**Other Authorities**

Couch on Insurance § 242:28(3d ed. Dec. 2007) ...................22

Federal Practice and Procedure § 1549 (2d ed. & Supp. 2007) ....22

Wright & Miller § 1549 .......................................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
GREAT AMERICAN INSURANCE COMPANY,          CASE NO.
                                           07 CIV. 6498 (RMB)
              Plaintiff,

        -against-

MARTIN L. SOLOMON, EDWIN W. ELDER,
WILLIAM J. BARRETT, WILMER J. THOMAS,
JR., JOHN A. DORE, KARLA VIOLETTO,
KINGSWAY FINANCIAL SERVICES, INC.
and AMERICAN COUNTRY HOLDINGS INC.,

              Defendants.
--------------------------------------X

### DEFENDANTS KINGSWAY FINANCIAL SERVICES, INC. AND AMERICAN COUNTRY HOLDINGS INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THEIR COUNTERCLAIM

Defendants Kingsway Financial Services, Inc. ("Kingsway") and American Country Holdings Inc. ("American Country") (collectively the "American Country Defendants") submit this Memorandum of Law in opposition to plaintiff Great American Insurance Company's ("Great American") Motion to Dismiss the American Country Defendants' bad faith Counterclaim (the "Counterclaim"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

In this Interpleader action, Great American disingenuously claims the mantle of a "mere disinterested stakeholder," seeking the court's guidance as to how to distribute the remaining Limit of Liability of its seriously eroded $10,000,000 directors and

officers policy (the "Great American policy") with respect to the underlying $300,000,000 litigation (the "Related Action"). Despite the American Country Defendants' reasonable demand several years ago to settle the action, within the policy limit, Great American has refused to increase its unsubstantial offer; but rather chose to fund the defense and erode the policy limit over several years.  The American Country Defendants are the parties that suffer the consequences of Great American's self-serving, egregious refusal to negotiate in good faith.

In moving to dismiss the Counterclaim, Great American attempts to walk away from the consequences of its conduct in the handling of the Related Action.  Contrary to Great American's assertions, the factual allegations in the Counterclaim more than sufficiently plead a claim for bad faith refusal to settle against Great American.

Although Great American was presented with multiple settlement demands well within its policy limit, Great American recklessly refused to settle over a period of nearly five years, even though its $10,000,000 policy limit was a tiny fraction of the $300,000,000 alleged damages and the more than $100,000,000 itemized assessment of damages that the American Country Defendants provided to Great American early in the case.  Rather than making a realistic settlement offer, Great American has been content to allow its policy limit to be steadily and dramatically

2

eroded by defense costs, leaving an ever dwindling corpus of funds available for settlement.

Despite requests for reimbursement for John Dore's defense costs, Great American has not reimbursed Kingsway since July 2007, the same month Great American commenced this action.

Great American's actions have had a devastating impact on its insureds, the director and officer defendants in the Related Action, as well as American Country, which is the "Insured Entity" under the policy.  As a direct consequence of Great American's extraordinary indifference to the interests of its insureds, the directors and officers face potentially enormous liability, while American Country and its parent Kingsway face enormous defense costs going forward of paying five prestigious law firms in the Related Action, pursuant to American Country's indemnification agreement with its former officers and directors, and no real hope of recovery under the Great American policy. Had Great American considered the interests of its insureds as much as its own interests, the related actions would be resolved and this action would be unnecessary.

Great American's argument that the American Country Defendants lack standing to assert a bad faith claim is also unfounded and unsustainable, as is discussed below.

## STATEMENT OF FACTS

The allegations of the Counterclaim are addressed in the Argument section.  The Counterclaim is appended to the American Country Defendants' Answer, which is attached as Exhibit A to the Declaration of Lester Chanin dated February 15, 2008 ("Chanin Aff."), as are the other documents referenced in the Counterclaim and related exhibits.

## ARGUMENT

### POINT I

THE MOTION TO DISMISS THE COUNTERCLAIM
SHOULD BE DENIED, BECAUSE THE COUNTERCLAIM
SUFFICIENTLY PLEADS THE AMERICAN COUNTRY
DEFENDANTS HAVE COUNTRYSTANDING TO ASSERT A
CLAIM FOR BAD FAITH REFUSAL TO SETTLE

A.   Motion to Dismiss Standard Under Rule 12(b)(6)

On a motion to dismiss, the court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).  "*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." Phillips v. Gidrich, 408 F.3d 124, 128 (2d Dep't 2005) (emphasis in original).

The court's function is "'not to weigh the evidence that might be presented at a trial but merely to determine whether the

complaint itself is legally sufficient.'" Chosun Int'l v. Chrisha Creations, Inc., 413 F.3d 324, 327 (2d Cir. 2005), (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)).

"A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "In order to survive a motion to dismiss, a proposed claim need only be 'colorable.'" Henneberry v. Sumitomo Corp. of Am., 415 F. Supp.2d 423, 436 (S.D.N.Y. 2006).

B.   New York Courts Have Long Recognized the Claim
     Of Bad Faith Refusal to Settle By an Insurer

"It is well established that an insurer may be held liable for damages to its insured for the bad faith refusal of a settlement offer." Ansonia Assocs. Ltd. P'ship v. Public Svc. Mut. Ins. Co., 180 Misc.2d 638, 641, 693 N.Y.S.2d 386 (Sup. Ct. N.Y. Cnty. 1998), aff'd, 257 A.D.2d 84, 692 N.Y.S.2d 5 (1st Dep't 1999). See also New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 295 F.3d 232, 240-41 (2d Cir. 2002) (insurers may be held liable for breach of duty to act in good faith when deciding whether to settle).

"Such bad faith stems from the fact that 'When confronted with a settlement offer within the policy limits, an inherent conflict arises between the insurer's desire to settle the claim for as little as possible, and the insured's desire to avoid personal liability in excess of the policy limits.'" Ansonia, 180 Misc.2d at 641 (quoting Smith v. General Accident Ins. Co., 91 N.Y.2d 648, 653, 674 N.Y.S.2d 267 (1998)).  The damages recoverable in an action based on an insurer's bad-faith refusal to settle are generally measured by "the amount for which the insured becomes charged in excess of his policy coverage." Id. (quoting Soto v. State Farm Ins. Co., 83 N.Y.2d 718, 723, 613 N.Y.S.2d 352 (1994) (quotations omitted)).

C.   The Counterclaim Sufficiently Alleges a
     Claim for Bad Faith Against Great American

To establish a cause of action for bad faith failure to settle against an insurer "a plaintiff must establish that the insurer's actions demonstrated a gross disregard for its insured's interests and that the insurer's conduct involved a deliberate or reckless failure to place on equal footing the interests of the insured with its own interests when considering a settlement offer." Greenidge v. Allstate Ins. Co., 446 F.3d 356, 362 (2d Cir. 2006) (quotations omitted).

The determination of whether an insurer has acted in bad faith is highly fact specific, and varies from case to case.

6

There is no simple test for determining
whether an insurer has acted in bad faith.
[Pinto v. Allstate Ins. Co., 221 F.3d 394,
399 (2d Cir. 2000)] ("No pat formula applies
to the wide variety of fact patterns that
occur, or readily resolves whether an insurer
acted in good faith."). Instead, the New
York Court of Appeals has adopted a
"multifactor approach to bad faith."  New
England Ins. Co. v. Healthcare Underwriters
Mut. Ins. Co., 295 F.3d 232, 241-42 (2d Cir.
2002).  Under this "multifactor approach,"
courts assess, inter alia, the plaintiff's
likelihood of success on the issue of
liability, the potential damages award, the
financial burden on each party if the insurer
refuses to settle, whether the claim was
properly investigated, the information
available to the insurer when the demand for
settlement was made, and any other relevant
proof tending to establish or negate the
insurer's good faith in refusing to settle.
Id. at 241 [citing Pavia v. State Farm Mut.
Auto. Ins. Co., 82 N.Y.2d 445, 453, 605
N.Y.S.2d 208 (1993]  [Id.]

New York courts are reluctant to dismiss bad faith failure

to settle claims at the pre-answer stage of a litigation where

the pleading alleges facts suggesting the essential elements of

the claim.  For example, in Yonkers Contracting Co., Inc. v.

General Star National Insurance Co., 14 F.Supp.2d 365 (S.D.N.Y.

1998), the court denied an insured's (Yonkers) motion to dismiss

a bad faith claim against its excess insurer (Gen Star), which

allegedly failed to negotiate a settlement or otherwise protect

its insured's interests after the primary carrier (Admiral)

tendered its policy limits to Gen Star.  The court held:

7

> [A] court is required to accept all of
> plaintiff's allegations as true and indeed
> draw every inference in plaintiff's favor.
> While plaintiff's allegations are general,
> even bordering on conclusory, they are
> sufficient at this stage to ward off
> dismissal.  Yonkers is entitled to an
> opportunity to fully develop the record in
> order to determine what Gen Star was asked to
> do following Admiral's tender, what
> opportunities were presented to it and what
> actions the excess carrier actually took.
>               *          *          *
> If, after discovery, plaintiff cannot
> identify Gen Star's breach with sufficient
> specificity, a motion for summary judgment
> may be appropriate.  At this time, however,
> dismissal of Yonkers' claims against Gen Star
> would be premature.

Id. at 374.  See also, Ansonia Associates Limited Partnership v.

Public Service Mutual Insurance Co., 257 A.D.2d 84, 692 N.Y.S.2d

5 (1st Dep't 1999), (affirming denial of insurer's motion for

summary judgment where there were questions of fact as to whether

the insurer exercised bad faith).

The factual allegations in the Counterclaim allege an

egregious case of bad faith, and are more than sufficient to

satisfy the lenient standards on a Rule 12(b)(6) motion. The

factual allegations in the Counterclaim and the letters

referenced therein demonstrate Great American's persistent

preference for its own interests and its extreme indifference to

its insureds' interests over a period of years.  Great American

has stubbornly refused to settle the case, even though it has had

multiple opportunities to do so within its policy limit.

Throughout this period, Great American made a decision to have the policy eroded by payment of defense costs.  The amount available to settle the case has virtually evaporated as time progressed.

Although Great American now -- almost five years after the inception of the Related Action -- tenders its policy limit to the Court in this Interpleader action, it does so with the obvious hope of avoiding the consequences of its refusal to consider the interests of the insureds.  By its own admission, there is little money left with which to settle the case. Moreover, due to Great American's utter disregard of the interests of American Country, the "Insured Entity" under the policy, American Country is now facing a dire situation where the policy limit will soon be fully eroded by defense costs and American Country will be forced to incur enormous defense costs in defending its former directors and officers, pursuant to its contractual indemnification obligations.

The Third Amended Complaint in the Related Action seeks $300 million in damages for common law fraud, securities fraud and negligence in connection with Kingsway's tender offer for the acquisition of American Country Holdings, Inc., a publicly held company.  The allegations against former officers and directors of American Country and other defendants involved in the tender

offer are painstakingly set forth in the 114-page, 392-paragraph Third Amended Complaint. (Chanin Aff. Ex. C).

The Counterclaim in the instant action and the letters referenced in the Counterclaim reflect the history of Great American's protracted refusal over a period of years to settle the Related Action for any reasonable sum, despite the American Country Defendant's repeated demands to settle well within the Great American policy limit for a minute fraction of the claimed damages based on an assessment of damages and deposition testimony in the case. The Counterclaim and letters also show Great American's extraordinary indifference to the interests of its insureds in the face of undeniable proof that its policy limits were being steadily and drastically reduced by ever mounting defense costs in the Related Action.

> Beginning in 2004, Great American unreasonably refused to settle or otherwise resolve the claims asserted against the Insured Persons in the Related Action within the limits of the Great American policy, despite the opportunity and demand to do so. (Id. Ex. B ¶ 40).

> In a letter dated August 23, 2004 from Kingsway's attorneys to the Insured Persons' attorneys, during the pre-discovery stage in the Related Action, Kingsway offered to settle all its claims against the Insured Persons in the Related Action for $8,500,000, which was well within the limits of the Great American policy. In the letter, Kingsway provided a detailed breakdown of its initial assessment of damages in the case, which totaled $106,636,000. (Id. Ex. B ¶ 41; Ex. E).

> In the letter (Id. Ex. E) Kingsway itemized its damages from the tender offer (acquisition) of American Country (a/k/a ACIC), for settlement purposes, as follows:

10

- "Kingsway has determined that ACHI's pre-acquisition unpaid loss reserves and loss adjustment expenses were understated by approximately $67.3 million."

- "Kingsway also has determined for settlement purposes that ACIC had overstated its April 3, 2002 tax deferred tax assets by approximately $1.2 million."

- "Kingsway also claims for settlement purposes an asset impairment adjustment for the $9.2 million of goodwill should also be included in the calculation of economic damages."

- "As of April 3, 2002, Kingsway's operations resulted in an approximate 12% return of stockholders equity.  This rate of return should be used to determine the opportunity cost component of economic damages."

- "Subsequent to April 3, 2002, Kingsway has been required to invest approximately $31.9 million of additional capital in ACHI.  As of December 31, 2003, the total amount invested in ACHI was approximately $57.3 million.  Accordingly, the opportunity cost component of economic damages should be based on the weighted average amount of invested capital that ranged from approximately $25.4 million to approximately $57.3 million during the period April 3, 2002 to December 31, 2003."

- "Finally, Kingsway claims for settlement approximately $2.0 million of professional fees related to the losses related to the ACHI acquisition."

Although Kingsway's demand was for less than 10% of its assessed damages, upon information and belief, Great American instructed the Insured Persons to reject the demand and make a counter-offer of $500,000, an amount that was less than one half of one percent of Kingsway's assessed damages [and 0.2% of the damages alleged in Kingsway's Second Amended Complaint].  (Id. Ex. B ¶ 42)

On September 6, 2005, coverage counsel for Kingsway and American Country wrote to Great American's attorneys, demanding that Great American respond to the $8.5 million demand, instead of continuing to waste the Great American policy limit through expenditure of mounting Costs of Defense. Kingsway and American Country requested that Great American engage in direct settlement negotiations rather than expending huge additional Costs of Defense in a formal mediation with seven attorneys (the "September 2005 Demand Letter"). In the September 2005 Demand Letter, Kingsway and American Country demanded that Great American negotiate in good faith; and that it cease placing its own interests ahead of those of its insureds. Kingsway and American Country reserved their right to commence a bad faith action against Great American for any damages in excess of the policy limit. (Id. Ex. B ¶ 43; Ex. F).

In the September 2005 Demand Letter, Kingsway's coverage counsel expressed urgent concern about the how the mounting defense costs were seriously eroding the policy limit available for settlement:

> The Great American Directors, Officers, Insured Entity Policy provides the "[a]mounts incurred as costs of defense shall reduce the limit of liability available to pay judgments or settlements and shall also be applied against the retention. Every dollar spent on defense reduces the amount available for settlement. Provable damages in the New York action appear to be a multiple of the $10,000,000 limit. Although American Country is not privy to the amount of legal fees for each of the seven distinct firms, we are aware every firm is addressing every aspect of the litigation. The fees continue to mount and reduce available settlement dollars. [Id. Ex. F, p. 2].

In the letter, Kingsway's coverage counsel also urged Great American to relent on its intransigent refusal to negotiate settlement directly, rather than through extremely costly mediation.

> Although you state Great American and its insureds "are willing to engage in settlement