> negotiations to avoid the expense of discovery" your suggestion of mediation appears to be a stalling tactic. There is presently an $8.5 million settlement demand and a $500,000 offer to settle the litigation. The policy has a $10,000,000 limit of liability. If Great American is willing to enter mediation with at least seven firms billing for every moment, we do not understand why Great American will not negotiate without a mediator. You imply Great American does not need additional discovery to value the action. Both informal settlement negotiations and mediation will produce the same additional information.
> [Id. Ex. F, pp. 1-2].

On or about October 11, 2005, Great American offered to settle the claims against the "Outside Director Defendants" in the Related Action for $1.3 million, which Great American equated with the Costs of Defense of the action. (Id. Ex. B ¶ 45).

Great American admits that it has reimbursed Kingsway and American Country more than $5 million in defense costs as of July 2007. (Id. Ex. B ¶ 46).

Kingsway and American Country rejected the offer, which failed to take into consideration Kingsway's $106,636,000 assessment of damages. In a letter dated November 11, 2005, Kingsway and American Country reduced the demand to settle the claims against all the Insured Persons to $8,000,000. (Id. Ex. B ¶ 47).

In the November 11, 2005 letter, Kingsway's counsel offered to provide extensive additional discovery if Great American needed it to facilitate settlement.

> On the subject of discovery, as we indicated in our November 1, 2005 letter, although we do not believe the individual claims files may be relevant to the issues of this case, we are prepared to produce them in electronic form subject to an acceptable protective order . . . .
> [Id. Ex. G, p. 1].

13

>In late February 2006, Great American offered to settle the Related Action for $1,750,000 and ceased all negotiations. (Id. Ex. B ¶ 48).
>
>In a letter dated March 3, 2006, the attorneys for Kingsway and American Country rejected the offer as exceedingly inadequate, given the quantum of damages in the case, and stated that Great American -- which had terminated settlement discussions -- had failed to negotiate in good faith. (Id. Ex. B ¶ 49; Ex. H).
>
>Due to Great American's intransigent refusal to negotiate a settlement in good faith, it allowed the limit of the Policy to erode while six law firms were involved in extensive motion practice and discovery to the point where it now alleges that less than $4.3 million of the $10 million policy limit remains and that the sum is not sufficient to settle all the claims against the Insured Defendants. (Id. Ex. B ¶ 50).

The evidence shows that Kingsway failed to make a reasonable settlement offer for years, despite Kingsway's repeated dire warnings that its policy limit available for settlement was being seriously eroded. Kingsway's prescient warnings have now come to fruition. Great American now brings this Interpleader Action, tendering its policy limit and claiming the bulk of its policy limit -- many times the paltry sums it offered in settlement and many times above its prior defense estimate -- has been eroded through payment of defense costs. Great American cannot use the action to escape the consequences of its gross disregard of the insureds' rights. Moreover, the policy is being further eroded through payment of the legal fees of at least three law firms in this action. Interestingly, despite requests, Great American has

14

not reimbursed Kingsway for any fees since July 2007, the same month it commenced this Interpleader action.

Contrary to Great American's assertions, the allegations in the Counterclaim and the supporting documentation are more than sufficient to set forth a <u>prima facie</u> case for bad faith refusal to settle against Great American.

D.  Great American's Rule 12(b)(6) Motion Improperly Relies on Evidence Outside the Pleading

Great American treats this Rule 12(b)(6) motion as one for summary judgment. Great American improperly relies on documents that are neither incorporated nor referenced in the Counterclaim. Great American's reliance on <u>Roth v. Jennings</u>, 489 F.3d 499 (2d Cir. 2007) (Great American Memo, at 9 fn.7) for authority to submit this extrinsic evidence is misplaced.

In <u>Roth</u>, the court set forth the exceptions to the rule that a 12(b)(6) motion should be based solely on the pleading:

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion.

<u>Id.</u>, 489 F.3d at 509.

15

Great American blatantly misreads the <u>Roth</u> opinion by claiming "Correspondence related to the settlement negotiations that are the subject of Plaintiff's [sic] Counterclaim are integral to the pleading, and properly before the Court on a Rule 12(b)(6) Motion." (Great American Memo, at 9 fn. 7). None of the extrinsic documents introduced by Great American are even mentioned in the Counterclaim, let alone "solely relie[d] on by the Complaint." The exhibits introduced by Great American should be disregarded by the Court, as should its arguments based on those documents.

The American Country Defendants have introduced the Great American policy, the Indemnification Agreement and settlement letters, which are all referenced in the Counterclaim, which arguably fall under the exceptions set forth in <u>Roth</u>. Apart from the pleadings in this case and the underlying action, the only other exhibit introduced by the American Country Defendants is a check Great American sent to Kingsway to reimburse it for attorneys fees it advanced in the Related Action, which was submitted to demonstrate Kingsway's standing not in opposition to the Rule 12(b)(6) motion.

E.  Great American Raises Factual Issues, Rather than Identifying Pleading Deficiencies in the Counterclaim

Great American claims that until the Directors and Officers assign their rights to American Country it cannot assert the claim. The assignment is part of the settlement negotiations.

While Great American outlines some of the discovery disputes in the Related Action, it ignores that it is attempting to ensure that the American Country Defendants are denied access to the Great American claims files and, presumably, the analysis of the insurers and insured persons concerning settlement.

Great American's contention that the American Country Defendants "walked away" from settlement negotiations is blatantly contradicted by the record and at best creates a question of fact. It was Great American that made a "final offer" of $1.75 million in February 2006, and steadfastly refused to engage in direct negotiations or to raise its paltry settlement offer. The American Country Defendants repeatedly urged Great American to engage in direct negotiations, as opposed to mediation, which American Country strongly felt was a waste of time and precious resources, but Great American refused to do so. (See, e.g., Chanin Aff. Ex. F).

Great American lists a response of the Directors and Officers to the settlement demands. The cleverly crafted argument implies the Directors and Officers have put up some

17

money. Of course, Great American ignores that it is really Great American that offered $500,000 in January 2005 in response to Kingsway's demand of $8.5 million. While a Director conveys the offer, the money comes from Great American. None of the initial negotiations have been with Great American; but through the Directors and Officers.

In October 2005 Great American increased the offer on behalf of the Directors and Officers to $1.3 million. Great American does not, nor can it claim, the Directors and Officers have paid one dollar of their own money. In February 2006 it raised the offer to $1.75 million – all the while the policy continues to erode. By July, 2007, before Great American commenced this premature action, the policy had been eroded to less than $5 million.

## POINT II

THE AMERICAN COUNTRY DEFENDANTS HAVE STANDING TO ASSERT A CLAIM FOR BAD FAITH REFUSAL TO SETTLE AGAINST GREAT AMERICAN, BECAUSE AMERICAN COUNTRY PURCHASED THE POLICY, IS AN INSURED UNDER THE POLICY, AND KINGSWAY AND AMERICAN COUNTRY ARE REAL PARTIES IN INTEREST

A. American Country Has Standing, Because It Purchased the Great American Policy and is in Privity with Great American

It is surprising that Great American contends the American Country Defendants lack standing since it named them as defendants in the Interpleader action, a tacit admission of standing.

Great American's strategy in prematurely commencing this action is another example of Great American protecting its own interests rather than those of its insureds. This action could create an impediment to the assignment of rights by the Insured Persons to the American Country Defendants. Regardless of whether the assignment has been effected, American Country has standing to raise the bad faith claim against Great American as an "Insured Entity" in the Great American policy.

Great American engages in strained and specious reasoning in an effort to manufacture its standing argument. It implicitly concedes that under established law the insurer owes a duty of good faith and fair dealing to those with whom it contracts. (See Great American Memorandum of Law dated January 10, 2008 ("Great American Memo"), at 11)). Great American draws the erroneous conclusion based on this settled rule; however, that the American Country Defendants have no standing, because the Counterclaim "does not . . . allege that either Kingsway or ACHI is insured under the Policy with respect to the Related Action." (Id. at 12). See, e.g., Smith v. General Accident Ins. Co., 91 N.Y.2d 648, 674 N.Y.S.2d 267 (1998) (claim for bad faith refusal of settlement "stems from the general principle that a covenant of good faith and fair dealing is implied in all contracts, including insurance policies"); 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 746 N.Y.S.2d 131 (2002) ("In

19

New York, all contracts imply a covenant of good faith and fair dealing in the course of performance.").

In making this argument, Great American ignores that American Country purchased the Great American policy; is in contractual privity with Great American; and is entitled to Great American's good faith performance of that contract. See Chanin Aff. Ex. D.

Great American owes a duty of good faith and fair dealing to American Country under the policy which American Country purchased for its benefit and that of its officers and directors. As the holder of this right, it necessarily follows that American Country has standing to assert a breach of this obligation by American Country, the party with whom it contracted.

Great American's reliance on Illinois and other out of state cases for the proposition that an insurer's duty of good faith is owed strictly to insureds or their assignees is misplaced. See Great American Memo, at 11-12. The cases cited by Great American involved a claim by a creditor of the insured and personal injury claimants, which are clearly distinguishable from the instant case, where the bad faith claim is asserted by <u>the contracting party</u>, which is also the "Insured Entity" under the policy. See Maertin v. Armstrong World Indus., Inc., 241 F. Supp.2d 434, 454 (D.N.J. 2002) (creditor of insured); Bean v. Allstate Ins. Co., 403 A.2d 793, 794-95 (Md. 1979) (auto accident claimant);

Scroggins v. Alstate Ins. Co., 393 N.E.2d 718, 720-21 (Ill. App. Ct. 1979) (injured pedestrian claimant); McCarter v. State Farm Mut. Auto Ins. Co., 473 N.E.2d 1015, 1018 (Ill. App. Ct. 1985) (distinguishing Scroggins).

B.  American Country Has Standing to Assert A Bad Faith Claim Against Great American, as the Promisee of the Great American Policy, Which is a Third-Party Beneficiary Contract

In the Great American policy, American Country and Great American agreed that Great American would pay on behalf of American Country, inter alia, all loss for which American Country granted indemnification to each officer and director. The Insuring Agreement in Section I.B. of the Great American policy provides in pertinent part:

> The Insurer [Great American] shall pay on behalf of the Company [American Country] all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** . . . first made against the **Insured Persons** [including past and present Directors and Officers] during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.

Chanin Aff. Ex. D.

Courts have held that this precise obligation under a directors and officers policy constitutes a third-party beneficiary contract, enforceable by the corporation, which has standing to assert such claims. For example in Wedtech v.

21

Federal Ins. Co., 740 F. Supp. 214 (S.D.N.Y. 1990), the court held that the corporation had standing to pursue an action seeking enforcement of the insurer's obligation to indemnify the directors and officers under a directors and officers liability policy. The court held:

> Defendant appears to challenge the standing of both plaintiffs to bring this action. In the D & O policies, Wedtech and Federal agreed that Federal would pay on behalf of Wedtech all loss for which Wedtech granted indemnification to each officer and director. The policies are clearly third-party beneficiary contracts, in which Federal is the promisor, Wedtech the promisee and the officers and directors third-party beneficiaries. Under New York law, a promisee for the benefit of third parties may enforce the promise on behalf of the third parties. *Berger v. Heckler*, 771 F.2d 1556, 1564 (2d Cir. 1985); *In re Spong*, 661 F.2d 6, 10 (2d Cir. 1981). Therefore, <u>Wedtech can clearly bring this action in an effort to enforce Federal's obligation to pay the directors and officers.</u>

Id. at 219 (underscored emphasis added). Accord In re Enron Corp. Sec. Derivative & "ERISA" Litig., 391 F. Supp.2d 541, 561 (S.D. Tex. 2005) (following Wedtech). See generally Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 242:28(3d ed. Dec. 2007) (discussing Wedtech in section entitled "Corporation; Generally--As Promisee on Behalf of Third-Party Beneficiary"); 6A Charles A. Wright, Arthur R. Miller and Mary K. Kane, Federal Practice and Procedure § 1549 (2d ed. & Supp. 2007) ["Wright & Miller"] (citing Wedtech for proposition that many commercial

22

contracts, including insurance policies "involve one party entering into a contract for the benefit of a third party").

As the court held in Wedtech, American Country as the promisee under the Great American policy has the right -- and standing -- to enforce Great American's obligations under the policy, including its duty of good faith and fair dealing. Cf. St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 160 F.R.D. 464, 466 (S.D.N.Y. 1995) (surety owed duty of good faith to parent of principal (promisee) under surety contract); PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 838 A.2d 135, 159 (Conn. 2004) (surety may face bad faith claim by principal (promisee) for failure to settle claim under bond).

C. The American Country Defendants Have Standing To Assert a Bad Faith Claim Against Great American, Because They Are the Real Parties in Interest

American Country, as the promisee of a third-party beneficiary contract, is the real party in interest. In Wedtech, the court expressly ruled that the corporation was the real party in interest, pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, and had standing to sue the insurer under a directors and officers liability policy. The court held:

> [A]ny argument that the case should be dismissed because Wedtech is not a real party in interest is foreclosed by Fed.R.Civ.P. 17(a) which provides that "a party with whom or in whose name a contract has been made for the benefit of another . . . may sue in that person's own name without joining the party

23

> for whose benefit the action is brought."
> Because we find that Wedtech has standing to
> pursue this claim and because Creditors'
> Committee [the other plaintiff] seeks no
> independent relief, we need not decide
> whether Creditors' Committee has standing.

Wedtech, 740 F. Supp. at 219. See also 6A Wright & Miller § 1549 (commenting that third-party beneficiary contracts including directors and officers insurance policies "fall within the special provision in Rule 17(a)").

Great American's premature Interpleader action is no more than a continued pattern of its breach of its obligations. It named the American Country Defendants as parties; and now claims they do not have standing to enforce Great American's duties. American County is an "Insured Entity" under the Great American policy. (Great American ignores that the American Country Defendants are the real party in interest.) The American Country Defendants are obligated to indemnify the former Directors and Officers. The motion to dismiss the counterclaim is an attempt to thwart American Country's rights. If the Counterclaim is dismissed and the $10,000,000 policy limit is completely eroded by defense fees then Great American walks away and the American Country Defendants recover little to nothing under the policy and remain obligated to fund the Related Action.

Kingsway is also a real party in interest, with standing to assert the bad faith Counterclaim against Great American. Great American has only partially reimbursing Kingsway. <u>See</u> Chanin Aff. Ex. I.

The American Country Defendants are the real parties in interest, because under the Indemnity Agreement with the former Directors and Officers of American Country, it is Kingsway and American Country -- not the directors and officers - that remain exposed. Moreover, Great American's actions mean that American Country may never recover any of its losses. <u>See</u> <u>Id.</u> Ex. J.

### CONCLUSION

For the reasons set forth above and in the accompanying Chanin Affirmation, it is respectfully requested that the Court deny Great American's motion to dismiss the Counterclaim in its entirety.

Dated:   New York, New York
         February 15, 2008

                                    GOODMAN & JACOBS LLP
                                    Attorneys for Defendants
                                    Kingsway Financial Services,
                                    Inc. and American Country
                                    Holdings Inc.

                                    _____
                                    Sue C. Jacobs (SCJ - 0929)
                                    Lester Chanin (LC - 3954)
                                    75 Broad Street, 30th Floor
                                    New York, New York  10004
                                    (212) 385-1191

H:\LC\KINGSWAY INTERPLEADER (MEMO OF LAW).doc