# GOODMAN & JACOBS LLP
75 BROAD STREET, 30TH FLOOR
NEW YORK, NEW YORK 10004

----------

(212) 385-1191
FAX: (212) 385-1770 (not for service)

February 22, 2008

BY HAND

The Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street, Room 650
New York, New York 10007-1312

        Re:  Great American Insurance Co. v.
            Martin L. Solomon, et al.
            07-CV-6498 (S.D.N.Y.) (RMB)
            Our File No.: 13-096

Dear Judge Berman:

    We write on behalf of Kingsway Financial Services, Inc. and American Country Holdings Inc. (the "American Country Defendants") to alert the Court to two brand new decisions by the New York Court of Appeals, which have direct bearing on the principal issues in Great American Insurance Company's ("Great American") motion to dismiss the American Country Defendants' bad faith counterclaim, which is in the briefing stage. See Bi-Economy Market, Inc. v. Harleyville Ins. Co. of N.Y., 2008 WL 423451 (N.Y. Feb. 19, 2008); Panasia Estates, Inc. v. Hudson Ins. Co., 2008 WL 420014 (N.Y. Feb. 19, 2008).

    Bi-Economy and Panasia were decided on February 19, 2008, four days after the American Country's papers in opposition to the motion to dismiss were served and filed. Great American's reply papers on the motion are due February 29, 2008.

    In Bi-Economy, 2008 WL 423451, the plaintiff, a wholesale and retail meat market insured under a "Deluxe Business Owner's" policy, "suffered a major fire" and sued its insurer alleging, inter alia, bad faith claims handling for improperly delaying payment for the building and contents damage and failing to timely

GOODMAN & JACOBS LLP

Hon. Richard M. Berman
February 22, 2008
Page 2


pay the full amount of its business interruption claim. The New York Court of Appeals held that the insured's "claim for consequential damages including the demise of its business were reasonably foreseeable and contemplated by the parties, and thus cannot be dismissed on summary judgment." Id., slip op. at 4.

In the companion case of Panasia, 2008 WL 420014, the insured building owner's property was extensively damaged due to water infiltration during a renovation project. The insurer moved for partial summary judgment, dismissing the insured's bad faith allegations and prayers for consequential, extra contractual or incidental damages stemming from the insurer's alleged delayed investigation and denial of the claim. The Supreme Court denied the motion and "the Appellate Division affirmed, stating that an insured may recover foreseeable damages, beyond the limits of its policy, for breach of a duty to investigate, bargain for and settle claims in good faith." Id. slip op. at 1 (quotations omitted). The New York Court of Appeals affirmed the denial of the motion, holding:

> [C]onsequential damages resulting from a breach of the convenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting. Here, the courts below failed to consider whether specific damages sought by Panasia were foreseeable damages as a result of Hudson's breach.

Id., slip op. at 1-2 (quotations omitted).

We respectfully request that the Court consider the enclosed cases in deciding the motion to dismiss.

Respectfully,

*[signature]*

Sue C. Jacobs

Enc.

**GOODMAN & JACOBS LLP**

Hon. Richard M. Berman
February 22, 2008
Page 3

cc:   Honorable Judge Henry Pitman - By Hand
      United States District Court
      Southern District of New York
      500 Pearl Street
      New York, New York 10007

      Kenneth J. King, Esq. Pepper Hamilton LLP
      Attorneys for Plaintiff
      620 Eighth Avenue, 37th Floor
      New York, New York 10018-1405

      Scott O. Reed, Esq.
      Reardon, Golinkin & Reed
      Attorneys for Defendant John A. Dore
      111 W. Washington Street, Suite 707
      Chicago Illinois 60602-3439

      John Siffert, Esq.
      Lankler, Siffert & Wohl
      Attorneys for Defendant Karla Violetto
      500 5th Avenue, 33rd Floor
      New York, New York 10110

      Lewis J. Liman, Esq.
      Clary Gottlieb Steen & Hamilton LLP
      Attorneys for Defendants
      Martin L. Solomony, Edwin W. Elder,
      William J. Barrett and Wilmer Thomas
      One Liberty Plaza
      New York, New York 10006-1470

C:\JACOBS LTRS\KINGSWAY IMPLDR.BERMAN.053.08

Westlaw.

--- N.E.2d ----  
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418  
(Cite as: --- N.E.2d ----)

Page 1

Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York  
N.Y.,2008.

THIS DECISION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE NEW YORK REPORTS.

Court of Appeals of New York.  
BI-ECONOMY MARKET, INC., Appellant,  
v.  
HARLEYSVILLE INSURANCE COMPANY OF NEW YORK, et al., Respondents.  
Feb. 19, 2008.

Kathleen A. Burr, for appellant.  
Michael F. Chelus, for respondents.  
New York Public Adjusters Association; United Policyholders; New York Insurance Association et al., amici curiae.  
PIGOTT, J.

In this action brought by an insured against an insurer for breach of a commercial property insurance contract, the principal issue presented is whether the insured can assert a claim for consequential damages. Under the circumstances of this case, we hold that it can.[FN1]

> FN1. This being an appeal from the grant of partial summary judgment to the insurer, we view the facts in the light most favorable to the insured.

I.

Bi-Economy Market, a family-owned wholesale and retail meat market located in Rochester, New York, suffered a major fire in October 2002, resulting in the complete loss of food inventory and heavy structural damage to the building and business-related equipment. At the time of the fire, Bi-Economy was insured by defendant Harleysville Insurance Company under a "Deluxe Business Owner's" policy that provided replacement cost coverage on the building as well as business property or "contents" loss coverage.

The policy also provided coverage for lost business income, what is commonly referred to as "business interruption insurance," for up to one year from the date of the fire. Specifically, the contract stated that Harleysville would "pay for the actual loss of Business Income ... sustain[ed] due to the necessary suspension of [Bi-Economy's] 'operations' during the 'period of restoration.' " Business income is defined as the "(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll." "Period of restoration" is defined as the period of time that "[b]egins with the date of direct physical loss or damage" and "[e]nds on the date when the property ... should be repaired, rebuilt or replaced with reasonable speed and similar qual- ity."

Following the fire, Bi-Economy submitted a claim to Harleysville pursuant to the terms of the contract. Harleysville disputed Bi-Economy's claim for actual damages, and advanced only the sum of $163,161.92. More than a year later, following submission of their dispute to alternative dispute resolution, Bi-Economy was awarded the sum of $407,181. During all this time, Harleysville offered to pay only seven months of Bi-Economy's claim for lost business income, despite the fact that the policy provided for a full twelve months. Bi-Economy never resumed business operations.

In October 2004, Bi-Economy commenced this action against Harleysville, asserting causes of action for bad faith claims handling, tortious interference with business relations and breach of contract, seeking consequential damages for "the complete demise of its business operation in an amount to be proved at trial."Bi-Economy alleged that Harleysville improperly delayed payment for its building and contents damage and failed to timely pay the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----                                                                                           Page 2
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418
(Cite as: --- N.E.2d ----)

full amount of its lost business income claim. Bi-Economy further alleged that, as a result of Harleysville's breach of contract, its business collapsed, and that liability for such consequential damages was reasonably foreseeable and contemplated by the parties at the time of contracting.

Harleysville answered, and subsequently moved for leave to amend its answer to raise the defense that the contract excluded consequential damages and for partial summary judgment dismissing Bi-Economy's breach of contract cause of action. In support of its motion, Harleysville cited several contractual provisions excluding coverage for "consequential loss."

Supreme Court granted the motion and the Appellate Division affirmed, holding that "the insurance policy expressly exclude[d] coverage for consequential losses, and thus it cannot be said that [consequential] damages were contemplated by the parties when the contract was formed" (37 AD3d 1184, 1185 [internal quotation marks and citations omitted] ). The Appellate Division granted Bi-Economy leave to appeal and certified the following question: "Was the order of this Court, entered February 2, 2007, properly made?" We conclude that it was not.

II.

Bi-Economy contends that the courts below erred in dismissing its breach of contract claim seeking consequential damages for the collapse of its business resulting from a failure to fulfill its obligations under the contract of insurance. We agree and therefore reverse the order of the Appellate Division and reinstate that cause of action.

It is well settled that in breach of contract actions "the nonbreaching party may recover general damages which are the natural and probable consequence of the breach" (*Kenford Co. v. County of Erie,* 73 N.Y.2d 312, 319 [1989] ). Special, or consequential damages, which "do not so directly flow from the breach," are also recoverable in limited circumstances (*American List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38, 43 [1989] ). In *Kenford,* we stated that "[in] order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (*Kenford,* 73 N.Y.2d at 319 [internal quotation marks and citations omitted] ). We later explained that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made" (*Ashland Mgt. v. Janien,* 82 N.Y.2d 395, 403 [1993] ). It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable"(*id., citing*Restatement [Second] of Contracts § 351; 3 Farnsworth, Contracts § 12.14 [2d ed 1990] ).

To determine whether consequential damages were reasonably contemplated by the parties, courts must look to "the nature, purpose and particular circumstances of the contract known by the parties ... as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made' " (*Kenford,* 73 N.Y.2d at 319,*quoting Globe Ref. Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 544 [1903] ). Of course, proof of consequential damages cannot be speculative or conjectural (*see Ashland Mgt.,* 82 N.Y.2d at 403 [damages for the loss of future profits must be proven with reasonable certainty and "be capable of measurement based upon known reliable factors without undue speculation"]; *see also Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 261 [1986] ).

The dissent seeks to distinguish this case from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the *Kenford* line of reasoning by grouping it with that separate class of contract actions involving pure "agreements to pay"-contracts for money only-where the only recoverable damage for breach is interest. This distinction is without basis. With agreements to pay money-for example, an agreement to pay sales commissions or a contract to pay a lender $12 tomorrow for $10 given today, the sole purpose of the contract is to pay for something given in exchange. In such cases, what the payee plans to do with the money is external and irrelevant to the contract itself. In the present case, however, the purpose of the agreement-what the insured planned to do with its payment-was at the very core of the contract itself.

The dissent also blurs the significant distinction between consequential and punitive damages. The two types of damages serve different purposes and are evidenced by different facts. Consequential damages, designed to compensate a party for reasonably foreseeable damages, "must be proximately caused by the breach" and must be proven by the party seeking them (24 Lord, Williston on Contracts § 64.12, at 124-125 [4th ed] ). Punitive damages, by contrast, "are not measured by the pecuniary loss or injury of the plaintiff as a compensation" but are "assessed by way of punishment to the wrongdoer and example to others" (11 Perillo, Corbin on Contracts § 59.2, at 550 [rev ed] ). Unlike consequential damages, which are quantifiable, "[t]here is no rigid formula by which the amount of punitive damages is fixed, although they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it" (*IHP Corp. v. 210 Cent. Park South Corp.,* 16 A.D.2d 461, 466 [1st Dept 1962], *affd* 12 N.Y.2d 329 [1963] ).

As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims" (*New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 318 [1995] ). An insured may also bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe (*see e.g. Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 802 [Utah 1985] ["[I]t is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries"]; *The Best Place, Inc. v. Penn Am. Ins. Co.,* 82 Haw 120, 920 P.2d 334, 342 [1996], *quoting Noble v. Nat'l Am. Life Ins. Co.,* 128 Ariz 188, 624 P.2d 866, 867 [1981] ["An insurance policy is not obtained for commercial advantage; it is obtained as protection against calamity"]; *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1179 n9 [Miss 1990] ["An insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim"] ); *Ainsworth v. Combined Ins. Co. of America,* 104 Nev 587, 763 P.2d 673, 676 [1988] ["A consumer buys insurance for security, protection, and peace of mind"] ).

III.

The purpose served by business interruption coverage cannot be clearer-to ensure that Bi-Economy had the financial support necessary to sustain its business operation in the event disaster occurred (*see Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398, 400 [1st Dept 1981] ["The purpose of business interruption insurance is to indemnify the insured against losses arising from inability to continue normal business operation and functions due to the damage sustained as a result of the hazard insured against"], *affd* 56 N.Y.2d 991 [1982]; 3-36 Bender's New York Insurance Law § 36.06). Certainly, many business policyholders, such as Bi-Economy, lack the resources to continue business operations without insurance proceeds. Accordingly, limiting an insured's damages to the amount of the policy, i.e., money which should have been paid by the insurer in the first place, plus interest, does not place the insured in the position it would have been in had the contract been per-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----  
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418  
(Cite as: --- N.E.2d ----)

Page 4

formed (*see generally Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs.*, 91 N.Y.2d 256, 262 [1998] ["Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed"]; *Goodstein Constr. Corp. v. City of New York,* 80 N.Y.2d 366, 373 [1992],*citing*Restatement [Second] of Contracts § 347, Comment a; § 344 ["Contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed"] ).

Thus, the very purpose of business interruption coverage would have made Harleysville aware that if it breached its obligations under the contract to investigate in good faith and pay covered claims it would have to respond in damages to Bi-Economy for the loss of its business as a result of the breach (*see Sabbeth Indus. v. Pennsylvania Lumbermens Mut. Ins. Co.* (238 A.D.2d 767, 769 [3d Dept 1997] ).

Furthermore, contrary to the dissent's view, the purpose of the contract was not just to receive money, but to receive it promptly so that in the aftermath of a calamitous event, as Bi-Economy experienced here, the business could avoid collapse and get back on its feet as soon as possible. Thus, this insurance contract included an additional performance-based component: the insurer agreed to evaluate a claim, and to do so honestly, adequately, and-most importantly-promptly. The insurer certainly knew that failure to perform would (a) undercut the very purpose of the agreement and (b) cause additional damages that the policy was purchased to protect against in the first place. Here, the claim is that Harleysville failed to promptly adjust and pay the loss, resulting in the collapse of the business. When an insured in such a situation suffers additional damages as a result of an insurer's excessive delay or improper denial, the insurance company should stand liable for these damages. This is not to punish the insurer, but to give the insured its bargained-for-benefit.

Nor do we read the contractual exclusions for certain consequential "losses" as demonstrating that the parties contemplated, and rejected, the recoverability of consequential "damages" in the event of a contract breach. The consequential "losses" clearly refer to delay caused by third party actors or by the "[s]uspension, lapse or cancellation of any license, lease or contract."Consequential "damages," on the other hand, are in addition to the losses caused by a calamitous event (i.e., fire or rain), and include those additional damages caused by a carrier's injurious conduct-in this case, the insurer's failure to timely investigate, adjust and pay the claim.

Therefore, in light of the nature and purpose of the insurance contract at issue, as well as Bi-Economy's allegations that Harleysville breached its duty to act in good faith, we hold that Bi-Economy's claim for consequential damages including the demise of its business, were reasonably foreseeable and contemplated by the parties, and thus cannot be dismissed on summary judgment.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, defendants' motion for leave to amend their answer to raise the defense of contractual exclusion for consequential damages and partial summary judgment dismissing the plaintiff's second cause of action denied, and the certified question answered in the negative.

SMITH, J. (dissenting):  
*Panasia Estates, Inc. v. Hudson Insurance Company*

In *Rocanova v. Equitable Life Assur. Socy. of U.S.* (83 N.Y.2d 603 [1994] ) and *New York Univ. v. Continental Ins. Co.* (87 N.Y.2d 308 [1995] ), we rejected the argument that a bad faith failure by an insurer to pay a claim could, without more, justify a punitive damages award. We held that punitive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
Page 5
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418
(Cite as: --- N.E.2d ----)

damages are not available for breach of an insurance contract unless the plaintiff shows both "egregious tortious conduct" directed at the insured claimant and "a pattern of similar conduct directed at the public generally" (*Rocanova,* 83 N.Y.2d at 613;*see NYU,* 87 N.Y.2d at 316). Today, the majority abandons this rule, without discussing it and without acknowledging that it has done so. The majority achieves this simply by changing labels: Punitive damages are now called "consequential" damages, and a bad faith failure to pay a claim is called a "breach of the covenant of good faith and fair dealing."

I think that *Rocanova* and *NYU* were correctly decided, and that the majority makes a mistake in largely nullifying their holdings.

Underlying our refusal in *Rocanova* and *NYU* to open the door to awards of punitive damages was a recognition of the serious harm such awards can do. Punitive damages will sometimes serve to deter insurer wrongdoing and thus protect insureds from injustice, but they will do so at too great a cost. Insurers will fear that juries will view even legitimate claim denials unsympathetically, and that insurers will thus be exposed to damages without any predictable limit. This fear will inevitably lead insurers to increase their premiums-and so will inflict a burden on every New Yorker who buys insurance.

This policy judgment was implicit in *Rocanova* and *NYU.*Not everyone agreed with it. The Appellate Division majority in *Acquista v. New York Life Ins. Co.* (285 A.D.2d 73, 78 [1st Dept 2001] ) hardly concealed its disagreement: "It is correct that, to date, this State has maintained the traditional view ... [citing *Rocanova* and *NYU* ]. Yet, for some time, courts and commentators around the country have increasingly acknowledged that a fundamental injustice may result...." The *Acquista* court found a way to avoid what it thought an injustice: award "consequential," not punitive damages. *Acquista* adopted the rule of some sister-state decisions, notably *Beck v. Farmers Ins. Exch.* (701 P.2d 795 [Utah 1985] ), that an insurer that denies a claim in bad faith becomes liable for consequential damages beyond the policy limits (285 A.2d at 80-81). With less frankness than the *Acquista* court-indeed, without even citing either *Rocanova* or *Acquista*-the majority here reaches the same result.

The "consequential" damages authorized by the majority, though remedial in form, are obviously punitive in fact. They are not triggered, as true consequential damages are, simply by a breach of contract, but only by a breach committed in bad faith. The majority never explains why this should be true, but the explanation is self-evident: the purpose of the damages the majority authorizes can only be to punish wrongdoers and deter future wrongdoing. They have nothing to do with consequential damages, or with the covenant of good faith and fair dealing, as those terms are ordinarily understood.

The whole idea of "consequential damages" is out of place in a suit against an insurer that has failed to pay a claim-or, indeed, in any case where the obligation breached is merely one to pay money. Consequential damages are a means of measuring the harm done when a party fails in some non-monetary performance-say, the transportation of a broken mill shaft (*Hadley v. Baxendale,* 9 Ex 341 [1854] ) or the construction of a football stadium (*Kenford Co. v. County of Erie,* 73 N.Y.2d 312 [1989] ). In such cases, where there is no agreement on what money will be paid in the event of a breach, a court must try to decide what damages the parties contemplated-what damages they would have agreed to had they considered the question when the contract was signed (*Kenford,* 73 N.Y.2d at 320). But in insurance contracts or other contracts for the payment of money, the parties have already told us what damages they contemplated; in the case of insurance, it is payment equal to the losses covered by the policy, up to the policy limits. There is no occasion for a *Kenford* analysis.

Nor could such an analysis, done in the way *Kenford* requires, support the results the majority reaches in these two cases. Under *Kenford,* the premise of consequential damages awards is that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----  
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418  
(Cite as: --- N.E.2d ----)

Page 6

they effectuate the parties' presumed intentions at the time of contracting: "*the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject*" (*Kenford,* 73 N.Y.2d at 320 [emphasis in original] ). Can anyone seriously believe that the parties in these cases would, if they had "considered the subject," have contracted for the results reached here? Imagine the dialogue. Applicant for insurance: "Suppose you refuse, in bad faith, to pay a claim. Will you agree to be liable for the consequences, including lost business, without regard to the policy limits?"Insurance company: "Oh, sure. Sorry, we forgot to put that in the policy."

The majority also departs from the established understanding of the "covenant of good faith and fair dealing"-thus obscuring the fact that the predicate for "consequential" damages here is exactly the same conduct, bad faith failure to pay claims, that we refused to make a predicate for punitive damages in *Rocanova* and *NYU.*Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain (*e.g., 511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144 [2002] ). Here, plaintiffs allege that defendants breached, in bad faith, the express terms of the policies, by refusing to pay for the losses the policies covered. There is no need for resort to the implied covenant of good faith, and this is the first time, as far as I know, that we have relied on that implied covenant to condemn the bad faith breach of an express promise.

These two conceptual errors-the misuse of the terms "consequential damages" and "covenant of good faith"-are not the only ones in the majority opinions. The *Bi-Economy* opinion seems fundamentally to misunderstand the purpose of business interruption insurance-which is to compensate the insured for a business interruption that has already occurred, not to prevent one from occurring (*see Bi-Economy* majority op at 8-9). If the insured's business is never interrupted, there can be no claim under a business interruption policy. This error seems unimportant, however, for the majority's discussion of business interruption insurance is apparently extraneous to its holding. The *Panasia* case involves no business interruption coverage-yet the majority upholds the legal sufficiency of Panasia's claim for consequential damages on the basis of a simple citation to *Bi-Economy* (*Panasia* majority op at 3-4).

The majority's bad policy choice is more important than the flaws in its reasoning. This attempt to punish unscrupulous insurers will undoubtedly lead to the punishment of many honest ones. Under today's opinions, juries will decide whether claims should have been paid more promptly, or in larger amounts; whether an insurer who failed to pay a claim did so to put pressure on the insured, or from legitimate motives, or from simple inefficiency; and whether, and to what extent, the insurer's slowness and stinginess had consequences harmful to the insured. All these very difficult, often nearly unanswerable, questions will be put to jurors who will usually know little of the realities of either the insured's or the insurer's business. The jurors will no doubt do their best, but it is not hard to predict where their sympathies will lie.

The result of the uncertainty and error that the majority's opinions will generate can only be an increase in insurance premiums. That is the real "consequential damage" flowing from today's holdings.

Order, insofar as appealed from, reversed, with costs, defendants' motion for leave to amend their answer to raise the defense of contractual exclusion for consequential damages and partial summary judgment dismissing the plaintiff's second cause of action denied, and certified question answered in the negative. Opinion by Judge Pigott. Chief Judge Kaye and Judges Ciparick, Graffeo and Jones concur. Judge Smith dissents in an opinion in which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418
**(Cite as: --- N.E.2d ----)**

Page 7

Judge Read concurs.

N.Y.,2008.
Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York
--- N.E.2d ----, 2008 WL 423451 (N.Y.), 2008 N.Y. Slip Op. 01418

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 420014 (N.Y.), 2008 N.Y. Slip Op. 01419
(Cite as: --- N.E.2d ----)

Page 1

Panasia Estates, Inc. v. Hudson Ins. Co.
N.Y.,2008.

THIS DECISION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE NEW YORK REPORTS.

Court of Appeals of New York.
PANASIA ESTATES, INC., Respondent,
v.
HUDSON INSURANCE COMPANY, Appellant.
Feb. 19, 2008.

Janet P. Ford, for appellant.
Michael S. Zicherman, for respondent.
PIGOTT, J.

Panasia Estates is the owner of commercial rental property located at 33 West 19th Street in Manhattan. Panasia had a commercial property insurance policy with Hudson Insurance Company, which included "Builders Risk Coverage," covering damage to its property while undergoing renovation. During the policy period, the roof of its building was opened in order to perform construction work. Inclement weather caused rain to enter the building through the roof opening, resulting in extensive damage to the property.[FN1]

> FN1. As this is an appeal from a summary judgment motion, we view the facts in the light most favorable to Panasia, the non-moving party.

Shortly after the occurrence, Panasia claimed it promptly notified Hudson of the loss. According to Panasia, however, Hudson failed to investigate or adjust the claim until several weeks later. Hudson then denied the claim three months after that, stating that Panasia's loss was the result of repeated water infiltration over time and wear and tear rather than from a risk covered under the builders risk policy provision.

Panasia commenced this action against Hudson, alleging that it breached the insurance contract by failing to properly investigate the loss and denying the loss as not covered under the policy. Panasia sought both direct and consequential damages that it claimed stemmed from Hudson's breach.

Hudson moved for partial summary judgment "dismissing all of Panasia's bad faith allegations and all prayers for consequential, extra contractual, or incidental damages or attorneys [sic] fees." Hudson argued, among other things, that a contractual exclusion for "[a]ny other consequential loss" precluded Panasia's request for consequential damages.

As pertinent here, Supreme Court denied that part of Hudson's motion to dismiss Panasia's claims for consequential damages. The Appellate Division affirmed, stating that "[a]n insured may recover foreseeable damages, beyond the limits of its policy, for breach of a duty to investigate, bargain for and settle claims in good faith" (39 AD3d 343, 343,citing Acquista v. New York Life Ins. Co., 285 A.D.2d 73 [1st Dept 2001] ). In addition, the court concluded that Hudson failed to show that the contractual exclusion for " 'consequential loss' applied to Panasia's claim, rejecting Hudson's argument that "consequential loss" and "consequential damages" were synonymous (id.).

The Appellate Division granted Hudson leave to appeal to this Court, certifying the question: "Was the order of the Supreme Court as affirmed by this Court, properly made?"We conclude that it was.

The courts below properly rejected Hudson's contention that it was entitled to judgment as a matter of law because consequential damages are not recoverable in a claim for breach of an insurance contract. As we explained in *Bi-Economy Market v. Harleysville Ins. Co.*[decided today], consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ---- 

Page 2
--- N.E.2d ----, 2008 WL 420014 (N.Y.), 2008 N.Y. Slip Op. 01419
(Cite as: --- N.E.2d ----)

surance contract context, so long as the damages were " 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting' " (majority opn, at 5, quoting *Kenford Co. v. County of Erie* (73 N.Y.2d 312, 319 [1989] ). Here, the courts below failed to consider whether the specific damages sought by Panasia were foreseeable damages as the result of Hudson's breach. Because the record before us is not fully developed on that issue, such claim must be considered by Supreme Court.

Lastly, as the Appellate Division correctly concluded, the contractual exclusion for consequential loss does not bar the recovery of consequential damages (*see* Bi-Economy, at 10-11).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and certified question answered in the affirmative.

SMITH, J. (dissenting):
*Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York, et al.*

In *Rocanova v. Equitable Life Assur. Socy.* of U.S. (83 N.Y.2d 603 [1994] ) and *New York Univ. v. Continental Ins. Co.* (87 N.Y.2d 308 [1995] ), we rejected the argument that a bad faith failure by an insurer to pay a claim could, without more, justify a punitive damages award. We held that punitive damages are not available for breach of an insurance contract unless the plaintiff shows both "egregious tortious conduct" directed at the insured claimant and "a pattern of similar conduct directed at the public generally" (Rocanova, 83 N.Y.2d at 613; see NYU, 87 N.Y.2d at 316). Today, the majority abandons this rule, without discussing it and without acknowledging that it has done so. The majority achieves this simply by changing labels: Punitive damages are now called "consequential" damages, and a bad faith failure to pay a claim is called a "breach of the covenant of good faith and fair dealing."

I think that Rocanova and NYU were correctly decided, and that the majority makes a mistake in largely nullifying their holdings.

Underlying our refusal in Rocanova and NYU to open the door to awards of punitive damages was a recognition of the serious harm such awards can do. Punitive damages will sometimes serve to deter insurer wrongdoing and thus protect insureds from injustice, but they will do so at too great a cost. Insurers will fear that juries will view even legitimate claim denials unsympathetically, and that insurers will thus be exposed to damages without any predictable limit. This fear will inevitably lead insurers to increase their premiums-and so will inflict a burden on every New Yorker who buys insurance.

This policy judgment was implicit in Rocanova and NYU. Not everyone agreed with it. The Appellate Division majority in *Acquista v. New York Life Ins. Co.* (285 A.D.2d 73, 78 [1st Dept 2001] ) hardly concealed its disagreement: "It is correct that, to date, this State has maintained the traditional view ... [citing Rocanova and NYU]. Yet, for some time, courts and commentators around the country have increasingly acknowledged that a fundamental injustice may result...." The Acquista court found a way to avoid what it thought an injustice: award "consequential," not punitive damages. Acquista adopted the rule of some sister-state decisions, notably *Beck v. Farmers Ins. Exch.* (701 P.2d 795 [Utah 1985] ), that an insurer that denies a claim in bad faith becomes liable for consequential damages beyond the policy limits (285 A.2d at 80-81). With less frankness than the Acquista court-indeed, without even citing either Rocanova or Acquista-the majority here reaches the same result.

The "consequential" damages authorized by the majority, though remedial in form, are obviously punitive in fact. They are not triggered, as true consequential damages are, simply by a breach of contract, but only by a breach committed in bad faith. The majority never explains why this should be true, but the explanation is self-evident: the purpose of the damages the majority authorizes can only be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
--- N.E.2d ----, 2008 WL 420014 (N.Y.), 2008 N.Y. Slip Op. 01419
(Cite as: --- N.E.2d ----)

Page 3

to punish wrongdoers and deter future wrongdoing. They have nothing to do with consequential damages, or with the covenant of good faith and fair dealing, as those terms are ordinarily understood.

The whole idea of "consequential damages" is out of place in a suit against an insurer that has failed to pay a claim-or, indeed, in any case where the obligation breached is merely one to pay money. Consequential damages are a means of measuring the harm done when a party fails in some non-monetary performance-say, the transportation of a broken mill shaft (*Hadley v. Baxendale,* 9 Ex 341 [1854] ) or the construction of a football stadium (*Kenford Co. v. County of Erie,* 73 N.Y.2d 312 [1989] ). In such cases, where there is no agreement on what money will be paid in the event of a breach, a court must try to decide what damages the parties contemplated-what damages they would have agreed to had they considered the question when the contract was signed (Kenford, 73 N.Y.2d at 320). But in insurance contracts or other contracts for the payment of money, the parties have already told us what damages they contemplated; in the case of insurance, it is payment equal to the losses covered by the policy, up to the policy limits. There is no occasion for a Kenford analysis.

Nor could such an analysis, done in the way Kenford requires, support the results the majority reaches in these two cases. Under Kenford, the premise of consequential damages awards is that they effectuate the parties' presumed intentions at the time of contracting: "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject" (Kenford, 73 N.Y.2d at 320 [emphasis in original] ). Can anyone seriously believe that the parties in these cases would, if they had "considered the subject," have contracted for the results reached here? Imagine the dialogue. Applicant for insurance: "Suppose you refuse, in bad faith, to pay a claim. Will you agree to be liable for the consequences, including lost business, without regard to the policy limits?"Insurance company: "Oh, sure. Sorry, we forgot to put that in the policy."

The majority also departs from the established understanding of the "covenant of good faith and fair dealing"-thus obscuring the fact that the predicate for "consequential" damages here is exactly the same conduct, bad faith failure to pay claims, that we refused to make a predicate for punitive damages in Rocanova and NYU. Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain (e.g., *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144 [2002] ). Here, plaintiffs allege that defendants breached, in bad faith, the express terms of the policies, by refusing to pay for the losses the policies covered. There is no need for resort to the implied covenant of good faith, and this is the first time, as far as I know, that we have relied on that implied covenant to condemn the bad faith breach of an express promise.

These two conceptual errors-the misuse of the terms "consequential damages" and "covenant of good faith"-are not the only ones in the majority opinions. The Bi-Economy opinion seems fundamentally to misunderstand the purpose of business interruption insurance-which is to compensate the insured for a business interruption that has already occurred, not to prevent one from occurring (see Bi-Economy majority op at 8-9). If the insured's business is never interrupted, there can be no claim under a business interruption policy. This error seems unimportant, however, for the majority's discussion of business interruption insurance is apparently extraneous to its holding. The Panasia case involves no business interruption coverage-yet the majority upholds the legal sufficiency of Panasia's claim for consequential damages on the basis of a simple citation to Bi-Economy (Panasia majority op at 3-4).

The majority's bad policy choice is more important than the flaws in its reasoning. This attempt

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ---- Page 4
--- N.E.2d ----, 2008 WL 420014 (N.Y.), 2008 N.Y. Slip Op. 01419
(Cite as: --- N.E.2d ----)

to punish unscrupulous insurers will undoubtedly lead to the punishment of many honest ones. Under today's opinions, juries will decide whether claims should have been paid more promptly, or in larger amounts; whether an insurer who failed to pay a claim did so to put pressure on the insured, or from legitimate motives, or from simple inefficiency; and whether, and to what extent, the insurer's slowness and stinginess had consequences harmful to the insured. All these very difficult, often nearly unanswerable, questions will be put to jurors who will usually know little of the realities of either the insured's or the insurer's business. The jurors will no doubt do their best, but it is not hard to predict where their sympathies will lie.

The result of the uncertainty and error that the majority's opinions will generate can only be an increase in insurance premiums. That is the real "consequential damage" flowing from today's holdings.

Order affirmed, with costs, and certified question answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and JONES concur. Judge SMITH dissents in an opinion in which Judge READ concurs.
N.Y.,2008.
Panasia Estates, Inc. v. Hudson Ins. Co.
--- N.E.2d ----, 2008 WL 420014 (N.Y.), 2008 N.Y. Slip Op. 01419

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.